## Ash *v.* Wilmington & Northern R. R. Co., Appellant.

[Marked to be reported.]

*Railroad crossing—Rule of " stop, look and listen."*

The instinct of self-preservation might be trusted to keep a traveler from getting in front of a train that he knew was approaching. The reason of the rule which requires a man to stop, look and listen, before crossing, is that by such action he may inform himself whether a train is approaching or not.

*Private siding—Care required before crossing.*

While the law does not prescribe that in all cases a man must stop, look and listen before crossing a private siding, it does require that he shall exercise ordinary care. It is his duty to see if the siding is in actual use at the time he approaches it, and a failure to do this is contributory negligence.

Argued Feb. 8, 1892. Appeal, No. 416, Jan. T., 1891, by defendant, from judgment of C. P. Chester Co., Oct. T., 1890, No. 56, on verdict for plaintiff, Mary M. Ash. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and HEYDRICK, JJ.

Trespass for damages for death of plaintiff's husband.

The facts appear by the opinion of the Supreme Court.

Defendant's points were as follows :

" 1. The testimony does not show any such negligence on the part of the defendant as will entitle the plaintiff to recover. *Answer :* We cannot affirm that point. We think there is evidence in the cause to submit to you upon the question of negligence upon the part of the defendant. But as we have said to you, the burden is upon the plaintiff to satisfy you of that." [2]

" 2. The testimony shows such contributory negligence on the part of Mr. Ash as will prevent a recovery by the plaintiff. *Answer :* We cannot affirm that point. We think it proper to leave that question to you to determine, under the instructions, which we have given you." [3]

" 3. Mr. Ash was bound to stop, look and listen just before crossing the railroad track, and as he did not do so, the plaintiff cannot recover. *Answer :* As you will see by my general charge, I cannot affirm that point. I do not so understand the law." [4]

"4. Mr. Ash was negligent in attempting to cross the railroad track, and therefore the plaintiff cannot recover. *Answer:* I cannot say that and must disaffirm the point." [5]

"5. That the plaintiff's witness, Robert Maitland, having testified, 'Mr. Ash undertook to cross the track immediately in front of the car without stopping, looking or listening,' therefore Mr. Ash was guilty of such contributory negligence as prevents a recovery by the plaintiff. *Answer:* I cannot affirm that point either. You will see that these last three points depend upon the question whether or not it was the duty of Mr. Ash, under the circumstances in this case, to stop, look and listen. We have said to you what our view of the law is upon that question, and therefore when the defendant asks me to say what he sets forth in these three points, I am compelled to disaffirm them because I differ with him in that view of the law." [6]

"6. The defendant's employees, having been acting under the orders of Kurtz & Son, in placing the cars in the mill of said firm, said defendant, under the evidence in the case, is not liable to respond in damages to the plaintiff. *Answer:* I say in answer to that point that as I recollect the evidence it shows that the employees of Kurtz & Son simply advised the employees of this company where they wanted the cars placed; they gave no directions in regard to the manner in which they should be placed; they gave no directions as to how the shifting should be done; they simply pointed out where they wanted the cars put, and therefore they assumed no responsibility in undertaking to direct the manner of shifting, and I must disaffirm that point." [7]

In the course of the general charge, the court, WADDELL, P. J., instructed the jury as follows:

"We cannot say to you, gentlemen, that Mr. Ash should have stopped, looked and listened." [1] . . . .

"Because we have said to you it was their [defendants'] duty to ring this bell and blow this whistle, and if they failed to do it, then they were negligent in performing their duty." [8]

Verdict for plaintiff for $3,500 and judgment thereon. Defendant appealed.

*Errors assigned* were (1–8) the portions of the charge above given, quoting them; (2, 7) answers to defendants' points quoting points and answers.

*William M. Hayes,* for appellant.—The rule declaring that it is contributory negligence not to stop, look and listen before crossing a railroad track is imperative under all circumstances: Greenwood v. P. W. & B. R. R. Co., 124 Pa. 577; P. R. R. Co. v. Beale, 73 Pa. 504; Irey v. P. R. R. Co., 132 Pa. 563; Moore v. P. W. & B. R. R. Co., 108 Pa. 349; Marland v. Pittsburgh etc. R. R. Co., 123 Pa. 487; Aiken v. P. R. R. Co., 130 Pa. 394; P. R. R. Co. v. Mooney, 126 Pa. 251; Nagle v. P. R. R. Co., 88 Pa. 38.

The distinction which the court sought to draw as to a private siding is untenable: McDonald v. Rockhill Iron & Coal Co., 135 Pa. 1; Nagle v. Railroad Co., supra; Carson v. Passenger Railway Co., 147 Pa. 219.

At a public crossing there is a reason for either blowing a whistle or ringing a bell, but to require both whilst shifting is being done on a private siding in a rolling mill, where it is quite probable neither could be heard, is making an unreasonable requirement.

*Thomas W. Pierce,* for appellee.—What constitutes negligence in a particular state of facts is generally a question for the jury, and not for the court: Schum v. P. R. R. Co., 107 Pa. 12; Fisher v. Railway Co., 131 Pa. 292; West Chester etc. Railroad Co. v. McElwee, 67 Pa. 311; Crissey v. Hestonville, etc. Railway Co., 75 Pa. 83.

The injury did not arise from stepping before a moving train, but from the careless driving forward of standing cars. The real question was whether the defendants gave warning and whether they shifted the cars carelessly. These were questions for the jury: Baughman v. R. R. Co., 92 Pa. 335; Del. etc. R. R. Co. v. Jones, 128 Pa. 308; P. R. R. Co. v. Weber, 76 Pa. 157.

OPINION BY MR. JUSTICE WILLIAMS, March 28, 1892:

The plaintiff's husband was crushed under the cars of the defendant company, and this action was brought by her to recover damages. The cars were at the time upon a siding or track belonging to the rolling mill of Kurtz & Son, and the plaintiff alleged that the death of her husband was due to the negligent handling of the cars, and to the neglect to give warning that the work of shifting the cars was in progress. The de-

fendant denied the want of care by its servants, alleged that the cars were properly handled and the necessary signals given, and asserted that the injury to Mr. Ash was due to his own negligence. An examination of the testimony shows that the stock and supplies used in the rolling mill were brought into it upon cars over this siding. Each morning, at about the same hour, an engine belonging to the defendant company came to the mill with loaded cars, and left them to be unloaded, as the material was needed in the mill during the day, and it took away the empty cars which had been unloaded during the previous day. Mr. Ash was a carpenter, and had been at work in or near the mill for ten or twelve days, and within a short distance of this siding. On the morning of the accident an engine was at work as usual shifting the cars upon this siding. Two empty cars had just been dropped into the mill and brought to a stop by the brake. The engine had gone a few rods for another, which it was shunting against the two empties in order to couple to them, preparatory to drawing them out of the mill and taking them away. Just at this moment Mr. Ash approached the track from one side, with a piece of scantling in his hand, and, without stopping, looking or listening, stepped on the track in front of the cars. The impact of the shunted car drove the others suddenly forward a few feet, and upon the body of Mr. Ash. These facts were not in controversy. What was their legal effect? The defendant's 3d point drew the attention of the court to this question, and asked that the jury be instructed that, under the circumstances disclosed, " Mr. Ash was bound to stop, look and listen, just before crossing the railroad track, and, as he did not do so, the plaintiff cannot recover." The learned judge made answer as follows : " As you will see by our general charge, I cannot affirm that point. I do not so understand the law." The 5th point, among others, also raised the same question, and asked an instruction that the failure to stop, look and listen, was contributory negligence that would prevent a recovery. The learned judge again answered : " I cannot affirm that point either," and he proceeded to say upon the general subject thus brought to his attention : " We have said to you what our view of the law is upon that question, and therefore when the defendant asks me to say what is set forth in these points, I am

compelled to disaffirm them, because I differ with him in that view of the law." Turning now to the general charge to ascertain what instruction the learned judge gave to the jury on the subject, we find the following: " If, therefore, in your opinion this siding was being used at the time named, and Mr. Ash knew it, or the evidence is such as leads you to believe he should have known it, then it was his duty to stop, look and listen, before he attempted to cross it. It was just as dangerous for him to attempt to cross the track at that time as it was to cross any railroad track in active operation."

This left two questions for consideration in determining the measure of care incumbent on Mr. Ash. Was the siding being used at the time the accident happened? If so, did Mr. Ash know it, or had he such knowledge as brought notice home to him of that fact? The first of these was not a question but a fact, on which the plaintiff's right to recover depended, and which was not controverted, and could not be. The jury was left, therefore, to inquire if Mr. Ash knew this fact, with the idea that if he did he was bound to the exercise of care, while if he did not, then no duty rested on him, but he was at liberty to go, as the evidence shows that he did go, upon the siding in front of the standing cars, without the slightest effort to inform himself of the situation. A single glance would have disclosed the impending danger, and enabled him to avoid it; but, if the jury should find that he did not know what that glance would have disclosed, he was not bound to make it. In other words, he was under no duty to inform himself. This is not an accurate statement of the rule, and, as applied to the facts of this case, was misleading.

Mr. Ash had been at work in or close by this mill for ten days or more. Each morning an engine had brought several cars into the mill, and removed those left on the morning before. The existence of the siding, and the use to which it was put, were necessarily within the knowledge of the employees at work in and about the mill. Mr. Ash may not have known that it was in actual use when he approached it. Let us assume that the jury found that he did not, for reasons that were satisfactory to them, and sufficient to justify the finding. But he knew the fact that the siding was across his path, that two cars were upon it, that they were to be taken away at some

time that day, and he owed it to himself to see whether the work of removal was in actual progress before putting himself upon the track. If he had taken the trouble to look he would have seen the car approaching that the engine had just thrown in on the siding, and, by waiting for an instant, until the cars were removed, could have crossed the track in safety. Because he did not look, he put himself in the way of the cars just in time to lose his life. We think the jury should have been instructed that, whether he knew the siding was at that moment in actual use or not, it was his duty to inform himself of the situation, by the exercise of his own senses; and if his death was due to his neglect so to inform himself, such neglect was contributory negligence, and would prevent a recovery.

If one approaching a crossing in a public street should rush forward without stopping, looking or listening for an approaching train, and reach the middle of the track, just in time to be crushed by a train that he would have seen if he had looked, no one would doubt that the failure to inform himself, or to try so to do, would be gross negligence. If one passing along a street in the daytime walks against a temporary obstruction lawfully in the highway, which he should have seen by the exercise of ordinary care, he must blame himself if he suffers harm by contact with it. It is not enough, therefore, that we try to avoid dangers of whose existence we have knowledge; we must exercise ordinary care, by the use of our senses, to detect the presence of danger of which, until thus discovered, we were ignorant.

This is the reason of the rule that one approaching the track of a railroad, with a view to cross it, must stop and look and listen. The instinct of self-preservation might be trusted to keep the traveler from getting in front of a train that he knew was approaching the crossing. The rule requires him to inform himself whether a train is approaching or not. When his senses afford him the information he acts upon it at his peril. So in the case in hand. We do not say that before crossing a siding like that belonging to this mill, a man must, under all circumstances, stop, look and listen, but we must say that it is his duty to see if it is in actual use at the time he approaches it, and not to walk into the open jaws of death, when the exercise of ordinary care would have made their position apparent.

The judgment is reversed.