# PITTSBURGH, CINCINNATI, CHICAGO & ST. LOUIS RAILWAY COMPANY *v.* SEIVERS, ADMINISTRATRIX.

[No. 20,020. Filed June 4, 1903. Rehearing denied February 26, 1904.]

RAILROADS.—*Injuries to Person on Track.*—*Contributory Negligence.*—An employe of a stone quarry was struck and killed by cars of defendant railway company while attempting to cross the side-tracks situated upon the quarry company's grounds, used by defendant. It appeared from the evidence that decedent could have seen the approaching cars when they were six hundred or·a thousand feet distant if he had looked when he was within three or four feet from the track; that he stopped on the track and looked in the opposite direction from which the train was approaching, and that if he had not stopped upon the track after he entered thereon, he could have passed over safely before the train reached the point on the track where he was standing. *Held,* that decedent was guilty of contributory negligence precluding a recovery. *pp. 238-246.*

SAME.—*Injuries to Person on Track.*—*Licensee.*—*Degree of Care Required.*— An employe of a stone quarry in crossing railroad tracks on his employer's premises in use by a railroad company in switching cars is bound to the exercise of at least ordinary care to avoid being injured while crossing the tracks. *p. 243.*

SAME.—*Injuries to Person on Track.*—*Contributory Negligence.*— When a person, in crossing a railroad track, is injured by a collision with the train, the fault is *prima facie* his own. *p. 244.*

SAME.—*Injuries to Persons at Work on or about Track.*—*Degree of Care Required.*—While the rule requiring persons to look and listen at the crossing of a railroad over a public highway does not apply in all of its strictness to persons whose employment requires them to be upon and about railroad tracks, it is the duty of an employe who is not at the time engaged at work demanding his attention to look and listen for approaching trains. *p. 245.*

NEGLIGENCE.— *When Question of Law.*—It is a general rule that the question of negligence on a given state of facts is one of fact, but where the facts are undisputed, the court is authorized to adjudge as a matter of law that negligence does, or does not, exist in the particular case. *p. 246.*

APPEAL AND ERROR —*Briefs.*—*Rules of Court.*—Where appellant complied with that part of rule twenty-two of the Supreme Court requiring a condensed recital of the evidence, in narrative form, to be set out in the brief, it was entitled to a consideration of questions raised upon the evidence, though other parts of the rule were disregarded. *pp. 246, 247.*

SAME.—*Briefs —Record.*—*Statement.*—Where appellee fails to point out any omissions or inaccuracies in appellant's statement of the record, the

court is authorized, under Supreme Court rule twenty-three, to treat and consider the statement accurate and true, without referring to the record. *pp. 247, 248.*

From Cass Circuit Court; *D. H. Chase,* Judge.

Action by Dora M. Seivers, administratrix of the estate of Deleno Gaby, deceased, against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company. From a judgment for plaintiff, defendant appeals. Transferred from Appellate Court, under §1337u Burns 1901. *Reversed.*

*G. E. Ross,* for appellant.
*M. Winfield, M. B. Lairy* and *M. F. Mahoney,* for appellee.

Jordan, J.—Action by appellee Dora M. Seivers, administratrix of the estate of Deleno Gaby, deceased, to recover damages of appellant for the alleged wrongful death of the decedent. Trial by jury, and finding in her favor awarding damages in the sum of $2,000. Over appellant's motion for a new trial judgment was rendered on the verdict.

The errors assigned are predicated upon overruling the demurrer to each paragraph of the complaint and upon the decision of the court in denying the motion for a new trial.

The complaint is in two paragraphs. The first charges that appellant is a railroad corporation, and on September 25, 1900, was operating a railroad between Logansport, Indiana, and Chicago, Illinois, and from Logansport east and southeast. The pleading alleges in respect to the death of appellee's decedent as follows: "That along its line between Logansport and the State line between Illinois and Indiana is a station called 'Kenneth,' situated in Cass county, Indiana; that near said station are large stone-quarries, operated by a company unknown to this plaintiff; that in the operation of said stone-quarries a large number of men are employed, to wit, four or five hundred; that there are at said quarries large stone-crushing machines propelled by steam, which machines rest upon timbers

placed in the ground; that there are also three blacksmith shops, tool-houses, and other buildings belonging to the quarry company; that from the main line of the defendant are three side-tracks or Y's, which run along by the quarry, and between the crushing machines and said blacksmith shop and other buildings, all of which buildings, crushing machines, and side-tracks are on the ground of the quarry company, and not upon the ground of the defendant; that said tracks are used by the defendant to switch cars, known as 'gondola cars,' specially adapted to hauling stone along and in front of the crushing machines for the purpose of being loaded; that through the center of the crushing machine is a path for the employes of the quarry company, by which they are enabled to cross the side-tracks to the buildings on the other side on business for the quarry company; that there is no other way for them to cross; that the several employes must necessarily cross and recross said side-tracks numerous times every day while working for the quarry company; that the points where the path touches the north side-track is so hidden by timber and buildings that it is impossible to see up and down the said track until right upon the track, all of which facts were well known to the defendant on the said 25th day of September, 1900, and for a long time before; that the defendant kept an engine at said station in charge of an engineer, known as a switch-engine, with which said gondola cars were taken from the main track and backed upon side-tracks, and placed so as to be loaded with stone, and then taken back by defendant to its main track, and shipped to various points in Indiana and other states; that large numbers of said cars were thus backed up and loaded and shipped every day, and as the same, when being backed up and shipped, required constant care upon the part of the employes of the defendant to avoid injury to said employes of the quarry company, it was the custom of the company to back said cars slowly, not to exceed three or

four miles per hour, and to have a brakeman stationed at the rear end, or properly at the front end, of the backing train, to warn employes, so that they might avoid all injury, all of which facts were well known to all said employes, including the plaintiff's decedent; that on the 25th day of September, 1900, as the plaintiff's decedent, Deleno Gaby, employed by said quarry company, and while on business for said company, came down said path to cross said side-tracks going south, and as he stepped upon said north track, was struck by a gondola car being backed up from the main line, knocked down and instantly killed by said moving car, owned, controlled, and handled by the defendant; that said decedent was killed by and through the negligence of the defendant and its employes, and not otherwise, in this, to wit: that there were several cars at the time being backed by said switch-engine; that no brakeman or other person was stationed on the rear end, nor at any other place, to give warning of the approaching cars; that said cars were backed in a careless and reckless manner, to wit, they were backed at a speed of ten or twelve miles per hour, all contrary to the custom of the company, along and at the place where the decedent was killed; that had the cars been backed in the usual manner, with the brakeman to give warning, there would have been no danger to the decedent and the other employes, but the deceased was killed, as aforesaid, by the said carelessness and negligence upon the part of the defendant and its employes." The second paragraph avers substantially the same facts as the first, except that they are more specifically and fully set out.

Counsel for appellant with much earnestness insists that both paragraphs are insufficient, for the reason that under the facts therein alleged it is not disclosed that appellant owed any duty to appellee's decedent which in any manner it had failed to discharge. Various reasons are also advanced by counsel for appellant to the effect that if the

sufficiency of the complaint be conceded, the evidence is not sufficient to sustain the judgment below.    Especially is it urged that the undisputed evidence introduced on the part of appellee establishes that her decedent at the time of the accident was guilty of contributory negligence which necessarily precludes a recovery, and for this reason alone it is contended that the trial court should, as requested, have directed the jury to return a verdict for appellant.

Conceding, without deciding, that the complaint is sufficient, we pass to a consideration of the evidence as exhibited by the record in order to determine if the judgment of the lower court thereon can be upheld.

The evidence introduced by appellee establishes that Gaby, the decedent, was an employe of the quarry company at and prior to the time of the fatal accident.    He was about sixty years old, had good eyesight and hearing, and was in the full possession of all of his senses.    On the line of appellant's railroad at a station called Kenneth, about three miles west of Logansport, in Cass county, large stone-quarries are operated by a company, wherein stone is quarried, put into large crushers, and, when crushed, is loaded onto cars and shipped to various markets.    Leading from the main track of appellant is a side-track, and from it are two sidings.    These sidings or switches on the premises of the quarry company are about three hundred feet from the main line of appellant's road.    The entire three sidings being located down past the crushing machines, which are situated on the premises of the quarry company.    The most northerly track of these three sidings is No. 1, the center being known as No. 8, and the south track as No. 6.    Under a contract with the quarry company appellant located these sidings upon the premises of the company for the purpose of hauling therefrom the crushed stone which the quarry company shipped away to its various customers. At the aforesaid station appellant had a switching crew, for the purpose of switching and placing cars from the

stone-quarries.  For the benefit and convenience of the
quarry company, the switching and setting of these cars,
previous to the time of the accident, which occurred on the
25th day of September, 1900, was done as much as possible
at the noon hour, being from 11:30 a. m. to 12:30 p. m.,
and in the evening along about 5 o'clock, so as not to inter-
fere with the operation of the quarries.  It appears, how-
ever, that cars were set at other times during the day; for
unless there were cars set on the tracks the quarries could
not run, as it was necessary to load the crushed stone on-
to the cars in order that work in the quarries would not
be delayed.  It is disclosed that the crushers are located
on upright timbers, these latter being from twelve to four-
teen inches square and from twelve to fifteen feet apart;
and on the north side of track No. 1, and to within
three feet and seven inches of the north rail, the crushers
are elevated on these timbers several feet above the level
of the tracks, and these timbers obscured the view of the
tracks both east and west, but, as hereinafter stated, a per-
son within three and one-half or four feet of track No. 1
would be afforded an unobstructed view of the track in both
directions.  Crusher No. 6 is the first to the east, then west
of it is No. 8.  Between these two latter crushers, and
about fifteen to twenty feet north of the north rail of track
No. 1, there was a stairway leading from the ground up to
the crusher.  From the foot of this stairway there was a
path, which led south under the platform of the crusher,
across the three switch tracks.  It appears that from fifty
to one hundred persons in the employe of the quarry com-
pany were accustomed to use this path, passing thereupon
over the tracks several times daily.  East of this path, and
about forty feet from it, was located the engine-house of
the stationary engine which was used to operate the quarry
machinery.  The employes of appellant who were engaged
about the station at Kenneth, and also the switching crew,
had observed the employes of the quarry company using

this path for several years prior to the time of the accident. These employes of the quarry, or stone, company would use the path in crossing the tracks in going over to one of the blacksmith shops operated by the stone company.

Prior to the time of the accident it had been the custom of appellant's switching crew, when moving cars back onto the tracks or sidings, to have a brakeman or the conductor ride on the foward car, and on the south side thereof, down to the west end of the engine-house, and then to alight at that point and locate or place the cars for the purpose of being loaded with the crushed stone. On September 25, 1900, appellee's decedent, about thirty-five or forty minutes past 12 o'clock of that day, came down the steps leading from the crushers to the railroad tracks in question, and started across track No. 1, and when he reached the middle of this track he stopped, and for some reason looked west, and then started forward over the track, but before he could clear the same, or get across, he was struck by a cut of cars, there being some six or seven in number, which the switching crew was pushing or moving upon the track from the east to a place for loading, and he was run over and killed by reason of the collision.

The evidence introduced upon the part of the plaintiff affirmatively shows that he did not look for the approach of any car or cars before he entered upon the track for the purpose of crossing, and it also undisputedly appears that after he stepped onto the track he stopped in the middle thereof and, for some reason, looked to the west, and when he stopped and looked to the west the train of cars by which he was killed was moving down from the east. He did not look to the east at the time he stopped upon the track; for, if he had, it appears that he could have seen the cars or car which struck him, which were then about fifty or sixty feet east of the point where he stopped. The evidence introduced by the plaintiff positively shows that if he had not stopped upon the track after he entered

thereon he could have passed over safely before the train reached the point on the track where he was standing. The witnesses who saw the accident and who testified in behalf of the plaintiff expressly stated that the decedent did not look before he entered upon the track, but that when he did look he was standing in the middle of the track, and then looked to the west, from which no train was approaching. It also appears that had he stopped within three and one-half or four feet of the track upon which he entered, there was nothing to prevent him from seeing the moving cars at that point. In fact, it is established that about three and one-half feet from the north rail of track No. 1, at which point the decedent entered thereon, if he had looked towards the east he could have seen the cars coming down the track when they were from six hundred to one thousand feet away from the point where he was standing.

As to the rate of speed the cars were moving at the time of the accident the evidence is conflicting, but there is evidence to show that they were running at a rate of from five to ten miles an hour. The engine bell was not rung, the whistle was not blown, there was no person on the front end of the first car as it was being backed down, or when it reached the point where it struck and killed appellee's decedent. As the train came towards the crushers a brakeman was stationed either on the back or rear end of the first or second car, and another brakeman was stationed on the other six or seven cars which were farther east toward the engine. The switching crew at the time in question consisted of two brakemen and a conductor and engineer. The conductor was not present at the time of the accident, he having gone over to a place near the main line to get bills for loaded cars which were to be shipped to Logansport that afternoon. The first brakeman it seems, the one which was on the first or second car, got off the car at a point near the west end of the engine-house, which, as

shown, was a proper place for him in "spotting" the cars. He could not ride farther west on the side of the car on account of the upright timbers which supported the platforms of the crushers.

It appears that by reason of the noise made by the stone crushers when they were running the ringing of the bell on the switch-engine would be useless, as it could not be heard above the noise made by the crushers. The decedent, on the day of the accident and prior thereto, was engaged in driving a car cart used in and about the quarries. It does not appear that there was any necessity for his crossing the tracks by the pathway in order to get to the blacksmith shop prior to the occurrence of the accident. It is disclosed that the superintendent of the quarry, a short time before the accident, directed some of the employes working in the quarry to take a screen over to the blacksmith shop in order to have it repaired. But these men, as it appears, had reached the blacksmith shop with the screen before decedent was struck by the cars. At the time of the accident it is disclosed that he was not working about the side-tracks at the place where he was killed, and the work in which he was engaged did not require him at the time to work upon these tracks.

As previously stated, appellee's undisputed evidence establishes that her decedent was killed while in the act of crossing the switch or siding tracks; that before entering thereon he failed to look out for a moving train, and, had he exercised his sense of seeing when he was within three and one-half feet or over from the track upon which he entered, he could by looking to the east have seen the cut of cars moving westward. He appears to have passed onto the track without looking, and when in the middle thereof, for some reason, stopped and looked to the west, and just as he turned to go forward he was struck by the cut of cars and killed. The evidence discloses that after he entered upon the track, had he gone forward instead of

stopping, he would have cleared the track and thereby avoided all danger. The surroundings and situation of the tracks at the point where he attempted to cross were open and obvious. The crew of appellant, which did the switching upon the quarry at and prior to the day of the accident, is shown to have been subject to the orders and directions of the quarry company. It does not appear to have been the uniform custom of this crew to ring the engine bell and to station a man at the end of the rear car when a cut of cars was being backed upon the tracks. The decedent left surviving him a wife and three children, the latter being twenty-two, thirty-one, and thirty-three years old.

There is much discussion by the learned counsel relative to the question as to whether the appellee's decedent, in passing over and upon the tracks or sidings in controversy, situated as they were upon the premises of the quarry company, must be considered under the circumstances as a mere licensee by permission of the railroad company, or one by virtue of its invitation. It appears from the evidence that appellant's rights in and upon the premises of the quarry company arose out of the contract which existed between it and the latter company. The right of the decedent to be upon the premises of the quarry company grew out of the fact that he was an employe of the quarry company at work in its said quarry. Consequently, under the circumstances, it may be asserted that appellant with its switching crew, and likewise the decedent, were upon the lands of the quarry company by its express invitation. Appellant, under the circumstances, in the operation of its cars over the switches or sidings in controversy, and the decedent, in passing thereover, were each bound to do what the law under the circumstances required. The latter, in entering upon and passing over the tracks, was at least bound to exercise ordinary care and diligence in order to avoid being injured by moving cars thereon. In the appeal of *Louisville, etc., R. Co.* v. *Schmidt,* 147 Ind. 638, we

said: "The law interprets ordinary care to be of that degree which a person of ordinary prudence, under the particular circumstances, is presumed to exercise to avoid injury. Such care is required to be in proportion to the danger to be avoided and the fatal consequences that may result from the neglect."

Conceding, without deciding, that the servants of appellant, in operating or moving the cut of cars at the time of the accident, were guilty of negligence, nevertheless the fact of negligence on their part will not sustain a recovery on the part of appellee, in the face of the facts established by her own evidence, that the decedent, at the time he was killed, was guilty of contributory negligence which proximately caused the fatal accident. Under the undisputed facts it is shown that had he exercised any degree of care or vigilance he could have avoided the collision which resulted in his lamentable death. It is apparent that after he entered upon the railroad track in question, had he merely glanced toward the east he could have observed the moving cars in time to have escaped the impending danger. Before entering thereon he certainly owed it to himself to look, at least, in order to discover if he was confronted at the time with any danger or peril in going upon the track. His negligence under the circumstances is certainly conspicuous, and nothing can be legitimately said in excuse thereof.

In *Stewart* v. *Pennsylvania Co.*, 130 Ind. 242, this court said: "A person is bound to use the senses, and exercise the reasoning faculties with which nature has endowed him. If he fails to do so, and is injured in consequence, neither he, in life, nor his representatives after his death, can recover for resulting injuries."

Counsel for appellee argue that the rule requiring persons to look and listen at the crossing of a railroad over a public highway does not apply in all of its strictness to persons whose employment requires them to be "upon,

about, and across railroad tracks," for the reason that they can not give the necessary attention to their work and at the same time be on the constant outlook for approaching trains. This principle is expressly recognized and affirmed in the appeal of *Baltimore, etc., R. Co.* v. *Peterson,* 156 Ind. 364. See, also, *McMarshall* v. *Chicago, etc., R. Co.,* 80 Iowa 757, 45 N. W. 1065, 20 Am. St. 445. But the rule is affirmed that where the servant is not at the time engaged at work demanding his attention, it is his duty to look and listen for approaching trains. 20 Am. and Eng. Ency. Law (2d ed.), 145. It appears, however, that the decedent was not engaged at work on the tracks in question at the time he was killed. Hence it was his duty to look and listen for approaching trains or cars, as the law exacts in case of a traveler. We do not mean to assert that it was his duty while at work in the quarry in question, under all circumstances, to stop and listen before crossing the sidings or tracks; but what we do affirm is that, in crossing the track as he did, he was required to exercise ordinary care under the circumstances in order to protect himself from danger. This requirement of the law it is clearly shown he did not heed or observe.

In the case of *Ash* v. *Wilmington, etc., R. Co.,* 148 Pa. St. 133, 23 Atl. 898, the plaintiff's husband was employed in the yards of a rolling-mill which were operated by a person other than the railroad company. In the mill-yard there were tracks and sidings which belonged to the rolling-mill, and the defendant railroad company ran its cars over these tracks in conveying material for the use of the rolling-mill. The plaintiff's husband was killed by the cars at the time they were being operated upon the siding or track belonging to the rolling-mill. She alleged that his death was due to the negligent handling of the cars by the defendant, and to its neglect to give warning that the work of shifting the cars was in progress. The defendant controverted the absence of care on the part of its servants, and

alleged that the injury to plaintiff's husband was due to his own negligence. This contention the court sustained. It was held in that appeal that while the law did not prescribe that in all cases a man must stop, look, and listen before crossing a private siding or switch track, it did require, however, that he should exercise ordinary care; the court affirming that it was his duty to see or discover if the siding was in actual use at the time he approached it, and that a failure to do so was contributory negligence.

It is true as a general rule that negligence on a given state of facts must be one of fact, but it is equally true that a court is authorized to adjudge as a matter of law, upon undisputed facts, that negligence does, or does not, exist in the particular case. In the case at bar, under the undisputed evidence given by appellee's own witnesses, there can be but one inference or conclusion drawn therefrom, and that is that the decedent was guilty of contributory negligence, and therefore as a matter of law a recovery in favor of appellee is precluded. Under the facts the court should have directed a verdict in favor of appellant.

The judgment is reversed, and the cause remanded, with instructions to the lower court to grant appellant a new trial.

## On Petition for Rehearing.

JORDAN, J.—The grounds assigned by appellee for a rehearing herein may virtually be said to be but two, the first of which is that the court failed to decide an important question presented by appellee in regard to the construction of rule twenty-two of this court; second, that the evidence in respect to the contributory negligence of the deceased is conflicting, hence the court erred in deciding that question adversely to appellee.

It is contended that appellant's counsel in his brief neglected to comply with the rule mentioned, and therefore the questions presented for our consideration ought not to

have been considered. Appellant's brief disclosed under proper captions the nature of the action, what the issues were, as to how they were decided, as to what was the judgment of the court, and the errors relied on for a reversal. Appellant's brief also gave a concise statement of the record in relation to the issues and the determination thereof, a concise statement of the facts which, as appellant claimed, the evidence established, and which were relied on for a reversal upon the ground, among others, that such facts established that appellee's decedent was guilty of contributory negligence at the time of the accident. It is true that, under the caption of "Errors relied on for a reversal," the brief merely stated such errors generally, in like manner as they were specified in the assignment of errors. It is not essential, under the circumstances, that we decide whether appellant complied in all respects with the requirements of rule twenty-two, for the only question determined was that the facts established by the evidence disclosed that the deceased was guilty of contributory negligence. Appellant had complied with the rule so far as the evidence was concerned, by making a statement in its brief wherein a condensed recital of the evidence in narrative form was given. If it were conceded that it had disregarded the rule in part, nevertheless it had the right to invoke the consideration of the court upon the questions presented upon the evidence relative to its own negligence and that of appellee's decedent. *Perry, etc., Stone Co.* v. *Wilson,* 160 Ind. 435, and cases cited.

Counsel for appellee in their brief did not dispute the statement of facts contained in appellant's brief disclosing contributory negligence on the part of the deceased, but were content to rest upon the argument that the rule which exacts of a traveler at a railroad crossing the duty to listen and look in both directions for approaching trains before attempting to cross had no application under the facts in the case at bar. By reason of appellee's silence in her

brief in regard to the facts stated by appellant in its brief we are authorized under rule twenty-three to treat and consider appellant's statement as accurate and true without referring to the record. *McElwaine-Richards Co.* v. *Wall,* 159 Ind. 557. We did not take advantage of this right, but examined the evidence contained in the record, in order to determine the question raised in respect to contributory negligence on the part of the deceased, and the adverse holding against appellee on that point was based upon the undisputed facts established by appellee's own witnesses as shown by the record. If appellee's contention that the evidence upon the deceased's contributory negligence was conflicting could be sustained by the record, we would not hesitate to grant a rehearing.

In addition to the fact that he neglected to look before entering upon the track, two other undisputed facts are established by the evidence: (1) If he had looked toward the east before going onto the track, he could have seen the approaching cars; (2) if he had not stopped on the track, he could have passed over in safety. The case, under the facts and circumstances, is not one which can be said to warrant the drawing of different inferences or conclusions, thereby falling within the rule affirmed in *Malott* v. *Hawkins,* 159 Ind. 127, "so that an impartial, sensible man may draw the inference and conclusion that the injured person was guilty of contributory negligence, while another man, equally sensible and impartial, might draw a different conclusion." Under the evidence, the question was, did the deceased exercise such care as a person of ordinary prudence would have exercised under the same circumstances? From his conduct or acts in the matter, under the particular circumstances of the case, but one inference or conclusion can be drawn, and that is that he did not exercise ordinary care. In such cases on appeal to this court the error committed by the trial court in rendering the judgment com-

plained of is one of law, which this court is required to correct. *Cleveland, etc., R. Co.* v. *Stewart,* 161 Ind. 242.

Counsel for appellee, in support of their petition for a rehearing, among other things, say that if the deceased "had stopped at the place suggested, namely, three and one-half or four feet north of the north rail of side-track No. 1, he would have been struck by the cars, as there was not room between the timbers which supported the stone crusher and the side-track for a person to stand without being struck by a passing car." They assert that, when he stepped out into the space between these timbers and the north rail, had he looked east he would have seen the cut of cars approaching within less than twenty feet of him at the rate of twelve miles per hour. They further assert that the deceased, being "in a place of danger, would have to retreat or advance, and, if he hesitated an instant, or made a mistake of judgment, such hesitation or mistake of judgment would not constitute contributory negligence." The infirmity of counsel's argument is that it attempts to construct a case outside of the evidence. The deceased was not between the timbers and the track, and it appears that he had sufficient space in which to stand without being subjected to any danger. If counsels' assertion is true, then he went upon the track without looking, virtually in front of the approaching cars, and before he succeeded in clearing the track he was struck and killed. The case, under the facts, is not one in which it appears that appellee's decedent was placed in a position of danger through the negligence of appellant, and thereby became confused by his surroundings, and made a mistake in the choice as to the way or manner of escaping from such danger, and in so doing was killed by the cars. Before entering upon the track it fully appears that he was in a place of safety, and went therefrom into one of danger, without exercising in the least the ordinary precautions imperatively exacted

of all persons who place themselves in similar positions of danger. *Wabash R. Co.* v. *Keister* (Ind. Sup.), 67 N. E. 521, and cases cited; *Rich* v. *Evansville, etc., R. Co.*, 31 Ind. App. 10; *Elliott* v. *Chicago, etc., R. Co.*, 150 U. S. 245, 14 Sup. Ct. 85, 37 L. Ed. 1068.

We have again given this case a careful consideration, and are constrained to hold that appellee's decedent is shown to have been guilty of negligence which proximately contributed to his death.

The petition for a rehearing is overruled.