## WYSONG v. SELLS.

[No. 6,472. Filed June 30, 1909.]

1. APPEAL.—*Briefs.*—*Failure of Appellee to File.*—Upon the failure of appellee to file a brief, the court, on appeal, may, in its discretion, reverse the judgment below as upon a confession of error. p. 240.

2. APPEAL.—*Briefs.*—*Setting Out Evidence.*—*Failure of Appellee to Contradict.*—The evidence set out in appellant's brief will be taken as true, unless it is contradicted by appellee. p. 240.

3. DEEDS.—*Mortgages.*—A deed given along with a title bond providing that upon payment of the money advanced, with interest, a deed will be executed in return, constitutes a mortgage. p. 240.

4. CONTRACTS.—*Title Bonds.*—*Presumptions.*—A written title bond, in the absence of evidence to the contrary, will be presumed to be the final agreement of the parties in relation to the transaction. p. 241.

5. EVIDENCE.—*Varying Written Contracts.*—*Title Bonds.*—*Sales of Real Estate.*—*Commissions.*—Where a title bond, executed by a grantee, made no provision for the payment of any commission

for a sale of the real estate in question, oral evidence of a prior agreement to pay such commission is inadmissible.   p. 241.

6. CONTRACTS.—*Commissions.—Sales of Real Estate.*—A contract for a commission for the sale of real estate must be supported by a valid consideration and must be in writing (§7463 Burns 1908, Acts 1901, p. 104).   p. 242.

7. APPEAL.—*Evidence.—Accounts.—Sales of Real Estate.*—Where a mortgagee of real estate in making his settlement with the mortgagor arranged his account in such a manner that the mortgagor was deceived into paying the mortgagee an excessive amount of money, a judgment for such mortgagee will be set aside as contrary to the evidence.   p. 242.

From Cass Circuit Court; *John S. Lairy,* Judge.

Action by Elvira M. Wysong against Charles H. Sells. From a judgment for defendant, plaintiff appeals.   *Reversed.*

*Mock & Sons* and *George W. Funk,* for appellant.

HADLEY, C. J.—Appellant was the owner of 200 acres of real estate in Cass county which was heavily encumbered by numerous mortgages, amounting to between $9,000 and $10,000.   Under an arrangement between appellant and appellee, appellee was to provide the funds with which to pay off the debts on said land.   To secure the payment of the funds thus advanced, appellant, together with her husband, executed to appellee a warranty deed to said land, and appellee in turn executed to appellant a title bond for the reconveyance of the same upon conditions hereinafter set out. A quitclaim deed to appellee for said land was also executed by appellant and her husband, and was placed in escrow. The land was afterwards sold, and the purchase price paid to appellee, who deducted therefrom the amount of the funds advanced by him, together with seven per cent interest thereon and certain costs and expenses incurred in discharging the debts.   The residue—less about $1,000—he paid over to appellant, who brought this action to recover the amount retained by appellee, over and above the amount expended, with interest.

The complaint is in two paragraphs.   The first is an action

for money had and received. The second avers the facts in detail, setting out the title bond and the various encumbrances. To this complaint appellee answered in three paragraps: (1) A general denial; (2) payment; (3) want of consideration. Trial was had by the judge who found for appellee. Appellant moved for a new trial, which motion was overruled, and this ruling is assigned as error.

Appellee has not seen fit to aid this court by filing a brief in his behalf, and we would therefore be warranted in determining the case against him as on confession of 1. error (*People's Bank* v. *State, ex rel.* [1902], 159 Ind. 353; *Union Traction Co.* v. *Forst* [1904], 162 Ind. 567; *Cobe* v. *Malloy* [1909], *ante,* 8); but this is a matter in the discretion of the court (*Berkshire* v. *Caley* [1901], 157 Ind. 1; *Neu* v. *Town of Bourbon* [1901], 157 Ind. 476; *Cobe* v. *Malloy, supra*).

We shall determine the questions presented by appellant's brief. The only questions presented are that the evidence is insufficient to sustain the finding and that the decision 2. of the court is contrary to law. Appellant in her brief has set out what purports to be the evidence given in narrative form. Under the rules and decisions of this court this statement of the evidence is taken as true, unless denied by appellee. *Brewer* v. *Bridges* (1905), 164 Ind. 358; *Pittsburgh, etc., R. Co.* v. *Seivers* (1904), 162 Ind. 234; *McElwaine-Richards Co.* v. *Wall* (1902), 159 Ind. 557; Rule 22, subd. 5, Supreme and Appellate Courts.

It is clear from the deeds executed, and the title bond to secure a reconveyance upon the payment of the money to be advanced by appellee, that the warranty deed to appellee was in fact nothing more than a mortgage, and appellee's rights thereunder were no greater than if the writings had been in the form of a mortgage. *Cross* v. *Hepner* (1855), 7 Ind. 359; *Ferguson* v. *Boyd* (1907), 169 Ind. 537; *Loeb* v. *McAlister* (1896), 15 Ind. App. 643; *Crane* v. *Buchanan* (1868), 29 Ind. 570.

The title bond expressly stipulated that if the amount of all liens against said real estate paid by appellee should be repaid to him by appellant on or before February 15, 1905, with interest thereon at the rate of seven per cent per annum from the date of payment of said several sums by said appellee, the land should be reconveyed to appellant. It also provided that if said appellant should procure a purchaser for said real estate, in a sum sufficient to cover the sums invested by appellee, with his interest, that he should, upon demand, execute a deed for said real estate. There was no stipulation that appellant should pay anything more.

4. This bond measured the duties and liabilities of the parties. It was in writing and it will be presumed to be the repository of the final agreement of the parties in regard to the subject-matter of the transaction, and all prior or contemporaneous parol stipulations or agreements will be presumed to be merged therein. *Pierse* v. *Bronnenberg* (1907), 40 Ind. App. 662; *Diven* v. *Johnson* (1889), 117 Ind. 512, 3 L. R. A. 308.

Under this bond, all that appellant was required to pay to appellee was the money invested by him, together with seven per cent interest. There is nothing in the bond

5. obligating appellant to pay anything for services or any commissions whatever, so that it was not competent to prove what was said by appellant or her agent prior to, or at the time of, the execution of the deeds and title bond, with reference to paying appellee for his time or trouble, or any other compensation, since an agreement in writing cannot be varied or contradicted in this way. The writings taken together must speak for themselves, and the agreement and transaction which they disclose cannot be varied or contradicted by parol evidence or proof of a contemporaneous parol contract. *Pierse* v. *Bronnenberg, supra,* and cases cited.

So to entitle appellee to any compensation or payment not

provided for in the writings, the burden was upon appellee to show a valid subsequent contract therefor. Appellee claimed $500 as commission for selling the land, but did not show, at the trial, a valid contract whereby appellant agreed to pay him any such commission. Such a contract, to be valid, must be in writing. §7463 Burns 1908, Acts 1901, p. 104; *Price* v. *Walker* (1909), 43 Ind. App. 519.

There was some evidence, however, that appellant in her settlement with appellee, through her husband acting as her agent, assented to this payment, with full knowledge of what it was for and the amount. Upon this point the evidence is conflicting, and there is no averment in the complaint that there was any mistake in connection therewith. We therefore do not decide whether, under the evidence, appellee was entitled to retain this sum. The land was sold on April 10, 1905, for $15,600. At that time appellee, according to his statement, had paid out on behalf of appellant, under the contract, $6,153.11, to which he was entitled to add $148.18 as his interest. At this time there still remained about $3,000 in encumbrances unpaid. On said date the purchaser of the land paid to appellee $1,000, and appellee deducted therefrom his interest, $148.18, $10 for services and $500 for commissions, leaving a balance due to appellant of $341.82. The purchaser of the land, under the agreement, was not to pay the remainder of the purchase price—$14,600—until March 1, 1906. Appellee continued to carry out his part of the agreement, and paid off the remaining encumbrances on said land. Thereafter, on March 1, 1906, the whole purchase price of the land having been paid to appellee, he made out an itemized account of his expenditures and charges, and admits that the final settlement was made upon this itemized statement. By this account it appeared that there was a balance of $3,134.52 owing to appellant. This amount appellee paid to appellant, which appellant accepted, but a few days afterwards appellant's husband, who transacted all of the business for appellant

and who made the settlement with and received the money from appellee, together with a copy of said account, sought to repudiate the settlement, claiming that appellee had retained more than he was entitled to. It was the claim of appellee on the trial, that, having settled upon this itemized account, appellant could not thereafter deny her liability for the payment of the sums therein exhibited. Appellant's husband contended that he took the account and the drafts for the balance without examination and upon appellee's representation that they were all right; that the agreement was that if it was found that the account was not all right, appellee would make it right; that he had confidence in appellee, and made no careful inspection of the itemized account or statement, at the time, but soon afterwards, upon examination, he discovered that he had been, as he thought, overcharged, and he at once sought to have the matter adjusted.

A copy of this itemized account is set out in appellant's brief. We have made careful computation of all the amounts set out in this statement, for which appellee claimed he should be credited, including the $500 for commission and the final payment made to appellant, and find that the total of such claims is $15,248.32. Deducting this from the amount received by him, as shown by the statement, which is $15,600, leaves a balance of $341.68 still due to appellant. Also on April 15, 1905, the account shows that appellee had paid out $6,153.11, on which appellant was entitled to a credit of $341.82, the balance remaining of the $1,000, first payment on the purchase of the land received by appellee, as before mentioned. This credit was not given, and under the account appellant is charged with interest on $6,153.11 from April 15, 1905, until March 1, 1906, when he should have been charged interest upon the amount remaining after deducting said sum of $341.82, namely: $5,811.29. The interest charged on the amount stated in this item of the account was $377.51, which is $21.92 too much. Adding said

sum of $21.92 to the excess already found, the account shows on its face, after giving appellee all the money to which he claimed to be entitled, including the $500 for commissions and the final payment to appellant, he still is indebted to appellant in the sum of $363.63. Under the facts here shown, appellant should have had judgment at least for said amount.

The statement prepared and submitted by appellee, upon which settlement was made, is gotten up in a manner calculated to deceive any one careless in business methods and unfamiliar with accounts, both of which appellant's agent is shown to have been. The items of charges are not shown in one column so as readily to be added, but are scattered about the statement. The footings are incorrect, and to detect this it is necessary to make a complete new statement, collecting together the various items of charges and adding them.

It is clear that appellee never did give appellant credit for the $341.82, balance of the first payment. The balances shown in the statement are arbitrary and forced, and appear to have been prepared by appellee in accordance with his principle, as declared on the witness-stand, when explaining why he had charged $500 for commission in carrying the deal through, after he had testified that such services were worth only $200, that "he did not believe in cracking a nut and giving somebody else all of the good." The motion for a new trial should have been sustained.

Judgment reversed, with instructions to grant a new trial.