The Chicago and Eastern Illinois Railway Company v. Hedges, Adm'x.

Judgment reversed.

Filed March 13, 1889.

———◆———

No. 13,624.

THE CHICAGO AND EASTERN ILLINOIS RAILWAY COMPANY
v. HEDGES, ADMINISTRATRIX.

NEGLIGENCE.— *When Actionable.*—A recovery can not be had for an injury which is the result of the joint or concurring negligence of both parties to the transaction. To charge the defendant with liability, the plaintiff must show that the injury was caused solely by the negligence of the defendant, or of persons for whose acts he is responsible.

RAILROAD.—*Crossing.—Drifting Train.—Negligence. — Injury to Footman.*— Although a railroad company may be negligent in detaching an engine from the cars composing the train, and, by increasing its speed, widely separating it from the cars, which are allowed to run over a highway or street crossing without means of giving the statutory warning, yet if a pedestrian, who is familiar with the crossing and the habit of the company to so detach the engine, is run over and killed by the drifting train, in the daytime, when by looking or by heeding outcries he could have avoided injury, an action for damages will not lie.

SAME.—*Presumption of Negligence of Traveller.*—Where it is found that the person killed could, by looking, have seen the approaching train in time to have avoided injury, and that there was nothing to prevent him, before reaching the track, from seeing the train when it was two hundred feet from the crossing, it will be presumed that he either did not look or that he deliberately took the risk of attempting to cross, notwithstanding the danger.

SPECIAL VERDICT.— *When Judgment Must be Rendered Upon.*—Where it appears by the answers of the jury to interrogatories that the facts, or

118    5
118    310

118    5
124    289

118    5
128    100
128    141

118    5
130    174

118    5
131    40

118    5
136    259

118    5
142    275
143    385
143    453

118    5
149    67

118    5
158    495
158    496
158    499

118    5
162    378
162    447

118    5
170    30

118    5
f171    172

The Chicago and Eastern Illinois Railway Company *v.* Hedges, Adm'x.

some of them, essential to support the general verdict are in irreconcilable conflict with such verdict, the court must accept as true the facts specially found and render judgment accordingly.

From the Fountain Circuit Court.

*T. F. Davidson* and *W. Armstrong*, for appellant.

*L. Nebeker* and *H. H. Dochterman*, for appellee.

MITCHELL, J.—This action was brought by Maria Hedges, administratrix of the estate of Daniel T. Hedges, deceased, against the appellant railroad company, to recover damages alleged to have resulted to the widow and children of the intestate on account of the death of the latter, which it is charged was caused by the wrongful acts and omissions of the defendant.

The particular wrong charged in the complaint is, that on a certain date, as one of the defendant's trains approached the town of Covington, the servants of the defendant having the train in charge, carelessly and negligently detached the engine from the cars; that the engine was run with accelerated speed to a water-tank about fifty yards west of the depot, leaving the cars to follow of their own momentum down a descending grade to the depot. . It is charged that the train of cars thus following passed over a highway which crosses the railway track near the depot, and that the defendant's servants negligently omitted to give any signals by ringing the bell, sounding the whistle, or otherwise, of the approach of the cars, from which the engine had been thus detached, and that in consequence of such neglect the intestate, being unaware of their approach, attempted to pass over the highway crossing, and was run against and over, the result being that his death was caused without any fault on his part.

The jury returned a general verdict in favor of the plaintiff, and in answer to interrogatories propounded they returned the following facts specially : The decedent had been familiar with the crossing for ten years, and for two or three

months before his death his business had taken him to the depot, about the same hour that he was killed, on each week day. He was on foot, and was on his way to the depot at the time he was struck by the train, which arrived at Covington on its schedule time. The train approached from the east, while the decedent was passing southwardly along the highway toward the depot. There were two side-tracks, lying north of the main track upon which the train was approaching, the one lying nearest the main track being nine feet distant therefrom. Having thus summarized the facts specially returned in answer to the first eighteen interrogatories, we set out the following questions, together with the answers of the jury, in full:

" 19. How far east along the main track could the deceased have seen had he looked when he reached the south rail of the south side-track? About two hundred feet.

" 22. Had it been the habit of those in charge of the train, for two or three months before the injury, to detach the engine and run it to the water-tank, as was done on the day of the injury? Yes.

" 23. Did the accident happen in the daytime? Yes.

" 24. Could the deceased, if he had looked in the direction of the approaching train, have seen it when he was on the south side-track? Yes.

" 25. Could the deceased have seen the train, if he had looked, in time to have avoided the injury? Yes.

" 27. Did the train conductor stand on the depot platform and shout a warning to the deceased? Yes.

" 32. Was there a brakeman on the car next to the forward car of the train? Between the second and third cars.

" 33. Did this brakeman shout a warning to the deceased while deceased was on the south side-track? Yes.

" 35. Were the brakes on the front car set against the wheels from the time the engine was detached until the deceased was struck? Yes.

" 38. At what rate of speed was the train approaching the crossing? About four miles an hour."

Other answers returned by the jury show that the decedent approached the crossing with his head down; that he was probably giving attention to the engine, which had passed some minutes in advance of the train from which it had been detached, and which was at the water-tank some 240 feet west of the crossing. The fifty-fifth question and answer were as follows:

" What was there to prevent the deceased from seeing the approaching train when he had reached the south rail of the south side-track? Nothing."

There were other answers, but none which in any way qualified or mitigated the force of those above set out.

The only question we deem it necessary to consider is, whether or not the court ruled correctly in overruling the defendant's motion for judgment on the special findings of the jury, notwithstanding the general verdict.

We quite agree with all that is said in support of the ruling below, concerning the scope and effect of the general verdict, and the necessity that there should be an irreconcilable conflict between it and the facts specially found, before the latter will prevail over the former. The general verdict must be regarded in the first instance as affirming the truth of each and every proposition or fact necessary to support the general conclusion arrived at, and every reasonable presumption will be indulged in its favor, while nothing will be inferred or presumed in aid of the special findings as against the general verdict. *McComas* v. *Haas,* 107 Ind. 512, and cases cited; *Rice* v. *Manford,* 110 Ind. 596.

When the jury are required by direct and unambiguous questions to return answers pertinent to the particular facts in issue, each answer, unless it is clearly inconsistent with some other relating to the same subject, is to be regarded as stating the exact truth in respect to the particular fact or proposition embraced by the question; and where it appears

by the answers, construed together, that the facts, or some one of them, essential to support the general verdict, are directly inconsistent, and in irreconcilable conflict with the general verdict, it becomes the plain duty of the court to accept the facts specially found as true, and to render judgment accordingly. *Frank* v. *Grimes*, 105 Ind. 346; *Cox* v. *Ratcliffe*, 105 Ind. 374.

It has often been decided that in actions such as this the burden of proof lies entirely on the plaintiff. Two propositions, one affirmative, and the other in a sense negative, must be established by him. It is for the plaintiff to show, either directly or by the facts and circumstances surrounding the occurrence, that the accident which caused the death of the intestate happened through or on account of the negligence of those for whose acts the railroad company was responsible, and that the injury resulted solely from their negligence, to the extent, at least, that the intestate was not himself guilty of any negligence which directly contributed to the result. *Tolman* v. *Syracuse, etc., R. R. Co.*, 98 N. Y. 198. If the injury resulted from the joint or concurring negligence of both parties to the transaction, it was not, in legal contemplation, the negligence of the railroad company which caused it, and the plaintiff must fail. *Cincinnati, etc., R. R. Co.* v. *Butler*, 103 Ind. 31; *Indiana, etc., R. W. Co.* v. *Greene*, 106 Ind. 279, and cases cited; *Indiana, etc., R. W. Co.* v. *Hammock*, 113 Ind. 1; *Davey* v. *London, etc., R. W. Co.*, 37 Eng. Rep. (Cook's notes) 606.

Conceding, as we do, that the jury might well have found that the railroad company was negligent in detaching the engine from the cars, and in increasing its speed so as to let the train drift over a highway or street crossing without any sufficient means of giving the statutory warnings—*Pennsylvania Co.* v. *State*, 61 Md. 108—it nevertheless appears from the facts specially found that the plaintiff's intestate, who approached the main track on foot, could have seen the approaching cars if he had looked when at a distance of nine

The Chicago and Eastern Illinois Railway Company *v.* Hedges, Adm'x.

feet from the main track, and that there was nothing to prevent him from seeing but his failure to look.

It is not only a settled rule of law, but it is one of the plainest dictates of ordinary prudence, that one about to go upon or across a railroad track must use the means available to him for the purpose of ascertaining whether he may do so in safety ; and it is as well settled as anything can be, that unless the conduct of the railroad company was such as to mislead or prevent a person about to go upon the track from looking, or to throw him off his guard by inducing him, by some affirmative act, to believe that he can cross in safety without observing such precautions, his failure to look or listen will be regarded as negligence *per se.* " No one can be said to be in the exercise of due care who places himself upon a railroad track without the assurance from actual observation that there is no approaching train." *Gaynor* v. *Old Colony, etc., R. W. Co.,* 100 Mass. 208. "A railroad crossing is a place of peril, and common prudence requires that a traveller on the highway, as he approaches one, should use the precaution of looking to see if a train is approaching. If he fails to do so, the general knowledge and experience of men at once condemn his conduct as careless." *Allyn* v. *Boston, etc., R. R. Co.,* 105 Mass. 77. One thus entering upon a railroad track can not recover for a resulting injury, even though the company may have neglected its duty also. *Tully* v. *Fitchburg R. R. Co.,* 134 Mass. 499 ; *Butterfield* v. *Western R. R. Co.,* 10 Allen, 532.

Where a railroad crosses a public highway upon the same grade, the situation is itself a warning and an incentive to one about to cross to exercise vigilance, to the full extent of his opportunities, in the use of his senses of sight and hearing, in order to assure himself whether or not a train is approaching, so as to avoid collision ; and where it appears that collision might have been avoided by the use of readily available precautions, there remains no ground for a recovery, unless an excuse be shown for such an extraordinary omission.

*Brown* v. *Milwaukee, etc., R. W. Co.*, 22 Minn. 165; *Abbett* v. *Chicago, etc., R. W. Co.*, 30 Minn. 482; *Mynning* v. *Detroit, etc., R. R. Co.*, 7 West. Rep. 324.

"A man must use his senses, and is not excused where he fails to discover the danger if he has made no attempt to employ the faculties nature has given him." *Lake Shore, etc., R. W. Co.* v. *Pinchin,* 112 Ind. 592; 2 Wood Railway Law, 1319, n. 2.

Conceding that it was the duty of the intestate to look before going upon the track, unless he had some valid excuse for not doing so, it is nevertheless contended that it did not directly appear by the special findings that he did not look, and hence it is argued, in effect, that, the contrary not appearing in the special findings, it is the duty of the court to presume, in support of the general verdict, that a valid excuse was shown for not looking.

The jury having found that the intestate could have seen the approaching train in time to have avoided injury if he had looked, and that there was nothing to prevent his seeing the train when it was two hundred feet distant from the crossing, if he had given attention and looked in that direction when he was nine feet away from the main track, the fact that he stepped on the track immediately in front of a moving train raises the presumption that he either did not look, or that he deliberately took the risk of attempting to cross, notwithstanding the approach of the train. In either case a recovery is impossible. The law presumes that one having the ordinary sense of sight must have seen that which was within the range of his vision, if he gave attention and looked, and if he saw the train approaching and pursued his way notwithstanding, he is to be regarded as taking the risk upon himself. *Cones* v. *Cincinnati, etc., R. W. Co.*, 114 Ind. 328, and cases cited.

The special findings, therefore, necessarily exclude the idea that the intestate looked before going upon the track, in such a sense as to rebut the presumption of negligence, and they

affirmatively show that he stepped in front of the moving cars while in a state of apparent abstraction, or indifference to the perils of the situation, and regardless of the warnings and outcries of the conductor and brakeman.    Such conduct the law pronounces negligent.    *Woodard* v. *New York, etc., R. R. Co.,* 106 N. Y. 369; *Rogstad* v. *St. Paul, etc., R. W. Co.,* 31 Minn. 208; *Tolman* v. *Syracuse, etc., R. R. Co., supra.*

Moreover, the special findings affirmatively show that the intestate was not thrown off his guard or misled by anything that occurred on the occasion of the accident.

He had been accustomed to go to the depot about the same hour every day for two or three months, and the defendant had habitually detached the engine from the cars, as it did on the day of the injury.    Nothing occurred, therefore, on the day of the accident with which he was not entirely familiar.    Besides, the findings show that the engine had passed over the crossing several minutes before the train, which approached at the rate of four miles an hour, arrived.    His attention was not distracted by one train following so close upon another, without warning, as to mislead him or throw him off his guard, nor did he enter upon the track after looking, influenced by an appearance of safety created by the company, as is the case where a flagman invites a traveller to cross.    It is quite true that one may be excused from looking when a flagman or other person employed by the company, whose duty it is to look out for approaching trains, signals that it is safe to cross, and so one who approaches on a public highway, and uses such opportunity as the situation affords to look and listen, is not to be charged with negligence as against a railroad company which, by its neglect to give the required signals, lures him into danger.    *Chicago, etc., R. R. Co.* v. *Boggs,* 101 Ind. 522, and cases cited; *Greany* v. *Long Island R. R. Co.,* 101 N. Y. 419.    The facts found make the present a case of an entirely different complexion from those relied on.

While nothing is to be taken by mere inference or intend-

ment in aid of special findings as against a general verdict,. they are nevertheless to be fairly construed, with a due regard to the issues and the burden of proof in the case, and if, after being thus construed, it is apparent that they establish facts which, if taken as true, defeat the plaintiff's right of recovery, the judgment should be for the defendant, notwithstanding the general verdict may have affirmed a right of recovery in the plaintiff. The present is such a case, and it follows, therefore, that the court erred in rendering judgment for the plaintiff over the defendant's motion.

The judgment is reversed, with costs, with instructions to the court below to maintain the appellant's motion for judgment on the special finding of facts, and to render judgment. accordingly.

