## MORFORD *v.* CHICAGO, INDIANAPOLIS AND LOUISVILLE RAILWAY COMPANY.

[No. 19,820. Filed May 16, 1902.]

TRIAL.—*Verdict.—Special Findings.—Presumption.*—Every reasonable presumption will be indulged in favor of a general verdict, but nothing will be inferred in aid of special findings of fact made in answer to interrogatories. ·*p. 495.*

RAILROADS.—*Collision at Highway Crossing.—Contributory Negligence.—Special Findings.*—In an action to recover damages for death caused by collision with a locomotive at a highway crossing, the jury returned a general verdict for plaintiff, and found specially, in answer to interrogatories, that deceased could have seen the headlight on the locomotive in time to have avoided the collision, if he had looked, and that he heard the noise of the train about ten minutes before the collision, and could have heard the train at any time thereafter until the collision if he had listened. *Held,* that it was not error for the court to sustain defendant's motion for judgment on the answers to interrogatories notwithstanding the general verdict. *pp. 496–500.*

From Hamilton Circuit Court; *J. F. Neal*, Judge.

Action by Lewis F. Morford against the Chicago, Indianapolis and Louisville Railway Company for damages. From a judgment for defendant, plaintiff appeals. Transferred from the Appellate Court, under §1337u Burns 1901. *Affirmed.*

*A. V. Hodgin, J. E. Kepperley, C. E. Barrett, E. A. Brown, R. Bamberger* and *I. Feibleman,* for appellant.
*E. C. Field* and *W. S. Kinnan,* for appellee.

Monks, J.—This action was brought by appellant in August, 1899, to recover damages for the loss of services of his son, a minor, and for injuries to his horse, buggy, and harness, on the ground that the same were caused by the negligence of the appellee. The jury returned a general verdict in favor of appellant, and also answers to interrogatories submitted by the court at the request of appellee, under §555 Burns 1901, §546 Horner 1901, Acts 1897, p. 128. Appellee's motion for a judgment in its favor on the answers to the interrogatories, notwithstanding the general verdict, was sustained and judgment rendered against appellant. This action of the court is assigned for error.

The general verdict necessarily determined each and every proposition essential to appellant's right of recovery in favor of appellant, and every reasonable presumption will be indulged in its favor, while nothing will be inferred or presumed in aid of the special findings of fact made in answer to the interrogatories. *Chicago, etc., R. Co.* v. *Hedges,* 118 Ind. 5, 8, and cases cited; *Central, etc., Tel. Co.* v. *Fehring,* 146 Ind. 189, 194. If, however, the facts found in answer to the interrogatories essential to appellant's recovery are inconsistent and in irreconcilable conflict with the general verdict, the court did not err in sustaining appellee's motion for a judgment in its favor on the answers to the interrogatories. §556 Burns 1901, §547 R. S. 1881,

and Horner 1901; *Chicago, etc., R. Co.* v. *Hedges,* 118 Ind. 5, 8, 9; *Frank* v. *Grimes,* 105 Ind. 346, 350, and cases cited.

As no wilful injury was charged, appellant was not entitled to recover if the deceased was guilty of contributory negligence. This action was commenced after the taking effect of §359a Burns 1901, §284a Horner 1901, which makes contributory negligence in such actions as this a defense provable under the general denial. *Indianapolis St. R. Co.* v. *Robinson,* 157 Ind. 414; *Malott* v. *Hawkins,* 159 Ind. ——.

Appellee insists that the answers to the interrogatories show that the deceased was guilty of negligence which directly contributed to the injuries sued for. If this is true there is no error in the record. The jury found, in answer to the interrogatories, that appellant's son was killed in a collision between one of appellee's locomotive engines and a buggy in which said son was riding, about 2:50 a. m. on January 30, 1899, at the crossing of appellee's track and a public highway known as Main street in the town of Carmel, about two blocks north of appellee's depot in said town. That said highway runs east and west, and appellee's track runs north and south where it crosses said highway; that from said highway crossing appellee's track runs due north for the distance of about half a mile. Said highway approaching said crossing was practically level, without any down grade, for a distance of seventy-five feet or more. As the train approached the crossing, the headlight on the locomotive engine was burning; the weather was cold, and it was "snowing and blowing." At the time of the collision the deceased was riding alone in a top buggy drawn by one horse; the top was up, and the side curtains were on. The deceased was going west, and the locomotive which collided with said buggy was coming from the north, hauling one of appellee's through passenger trains, and at the time of the collision was going at the rate of about thirty

miles per hour. Said train was a regular daily passenger train, and was about on schedule time that night. The deceased was, at the time, about sixteen years of age, was in the full possession of all his faculties, and his hearing and eyesight were good. He was and for a long time prior to said collision had been familiar with said crossing, its location and surroundings, and knew that a passenger train passed said point daily a few minutes before 3 o'clock a. m. A few minutes before the accident, the deceased and one Lindell left the house of one Hiatt in Carmel and went to Hiatt's barn, which was within three blocks of the Main street railroad crossing, to get appellant's horse and buggy. While they were engaged in hitching the horse to the buggy the deceased heard the roar of the train which killed him, and called Lindell's attention to the fact that the south bound train was approaching. The deceased, while he hitched up, knew said south bound passenger train was approaching Carmel from the north and was within hearing distance of the town. It was about ten minutes from the time the deceased heard said train at the barn until the accident occurred. After hitching up said horse, the deceased and said Lindell drove from said barn to Main street, about two blocks east of the railroad crossing, where they stopped and conversed for about five minutes. If deceased had listened attentively while at this point, he could have heard the noise and rumble of the approaching train. After having said conversation, the deceased drove west on Main street at a good trot until he reached the house of one Peele, the west side of which was about thirty-eight feet from the center of appellee's track. From Peele's house to the point of collision there was no evidence of the rate of speed at which the horse went. The horse was gentle and easily controlled, all of which was well known to the deceased. From about thirty-three feet east of the center of the railroad track at said crossing the view of appellee's track to the north for a

distance of 1,200 feet was unobstructed. The deceased could have seen the headlight of the engine for a distance of one-half mile, if he had looked to the north in the direction of the approaching train, at any time after he passed a point twenty-five feet east of the place of collision. There was nothing to obstruct the deceased's view of the approaching train after he reached a point thirty-one feet east of said crossing. If, as deceased approached said railroad track, he had looked to the north along the line thereof, at any point between said track and a place thirty-three feet east thereof, he could have seen the headlight of said approaching engine. There was no noise near said crossing to hinder the deceased from hearing the noise of the train, other than the noise made by the horse and buggy. His ears were not wrapped up, and there was nothing to interfere with his hearing the noise of said train at any time after the same was within one-half mile of said crossing, except the noise of said horse and buggy which obstructed his hearing to some extent; and he could have heard the noise of said train at any time after said train was within one-half mile of said crossing if he had stopped and listened; if he had listened attentively when he was approaching, he could have heard the noise of the train in time to have avoided the injury if he could have told the distance the train was from the crossing. The whistle of said locomotive was not sounded at any of the highway crossings before said collision.

It is settled law in this State that when a traveler approaches a point where a highway crosses a railroad track at grade, it is his duty to proceed with caution, and if he attempts to cross the track, either on foot or in a vehicle of any kind, he must assume that there is danger, and act with ordinary care upon that assumption. In attempting to cross he must listen for signals and noise of approaching trains, notice signals put up as warnings, and look out for approaching trains, if the surroundings are such as admit of that precaution. If he, by looking could have seen, or by

listening could have heard, an approaching train in time to have avoided injury, it will be presumed, in case he is injured by collision, either that he did not look, or, if he did look, that he did not heed what he saw. The law will assume in such case that such person actually saw what he could have seen if he had looked, and heard what he could have heard if he had listened. *Pittsburgh, etc., R. Co.* v. *Fraze,* 150 Ind. 576, 579, 65 Am. St. 377, and cases cited; *Lake Erie, etc., R. Co.* v. *Stick,* 143 Ind. 449, and cases cited; *Oleson* v. *Lake Shore, etc., R. Co.,* 143 Ind. 405, 411, 412, 413, 32 L. R. A. 149, and cases cited; *Chicago, etc., R. Co.* v. *Hedges,* 118 Ind. 5, 10, 11.

The special finding of facts made by the jury clearly show that the deceased could have seen the headlight of the approaching locomotive in time to have avoided said injuries if he had looked, and that he heard the noise of said south bound train, and knew it was approaching said crossing from the north when he was at Hiatt's barn, about ten minutes before the collision, and could have heard the noise of said train at any time thereafter until the collision if he had listened. He had an unobstructed view of the track to the north, and he either did not look and listen, or if he looked and listened he did not heed what he saw and heard, but took upon himself the risk of attempting to cross in front of an approaching train. *Cones* v. *Cincinnati, etc., R. Co.,* 114 Ind. 328, 330, and cases cited. Such conduct is, under the authorities cited, negligence *per se.* See cases cited *supra.*

It is not material, therefore, that there is no finding that he did not look, for the result is the same as if such finding had been made. As the deceased knew said train was approaching, it can not be claimed that the failure to ring the bell and sound the whistle misled him.

Apppellant insists that we must indulge the presumption that the finding that it was "snowing and blowing" shows that it was a blinding snow, and shut out the view of objects a few feet away. The jury, however, found that the

deceased could have seen the headlight of the locomotive for a distance of one-half mile. There is no conflict between these two findings, and we are not required to indulge any presumptions as to either that will make it conflict with the other. The two findings show that, while it was blowing and snowing, the decedent could see the approaching train at the distance of one-half mile.

As the special finding of facts show that the deceased was guilty of contributory negligence which directly contributed to his injury, the court did not err in rendering judgment thereon in favor of appellee. §556 Burns 1901, §547 R. S. 1881, and Horner 1901.

Judgment affirmed.