CLEVELAND, CINCINNATI, CHICAGO AND ST. LOUIS
RAILWAY COMPANY *v.* LYNN.

[No. 21,650. Filed June 20, 1911. Rehearing denied April 16, 1912.]

1. RAILROADS.—*Crossing Accident.—Look and Listen.*—It cannot be said as a matter of law that a person crossing a railroad track at a crossing is required, under all circumstances, or conditions, to look or listen at a particular time, in a particular direction, or from a particular place. p. 315.

2. RAILROADS.—*Crossing Accident.—Duty to Look.—Complaint.*— Where plaintiff was injured by a train coming from the northeast while he was in the act of crossing one track of the defendant's double tracks, and it is averred in the complaint that the view to the northeast was obstructed until plaintiff reached a point within eight or nine feet of the west track, and that to the south and east were tracks and switches of another railroad company, and it is not averred which of the two tracks was used for north bound and which for south bound trains, the court cannot say that, because no obstruction is alleged to exist to the south and east, plaintiff should have continued to look toward the northeast until after he had passed the obstruction, since it was also his duty to look to the southeast to guard against possible injury. p. 316.

3. RAILROADS.—*Crossing Accident.—Allegation as to Obstruction.— Complaint.*—Where a complaint for injuries incurred at a railroad crossing alleged that on the day of the injury plaintiff, with others, was engaged in moving a watch-house, and had just placed it, and that his view to the north would have been obstructed by said watch-house about twenty feet west of the track continuously up to a point within eight or nine feet of said track, such allegation shows the obstruction to relate to the time of setting the watch-house, and of the accident, and is a sufficient allegation of the obstruction. p. 318.

4. RAILROADS. — *Crossing Accidents. — Contributory Negligence. — Complaint.*—Where plaintiff alleged in his complaint that he was an employe of the C. company; that said company had many tracks east of and parallel with defendant's tracks; that at the time of the accident plaintiff was, with others, engaged in removing a watch-house which occasioned an obstruction of his view of defendant's train approaching from the northeast, that after setting the watch-house plaintiff started to cross defendant's west track at the street crossing and when he got to the southeast corner of the watch-house he looked up defendant's

tracks a distance of about 250 feet, and also listened, and neither saw nor heard any train approaching on said track from the northeast but saw and heard a train going northeast on defendant's east track, whereupon he looked to the southeast to see if there were trains approaching; that just as he placed one foot on defendant's west track, he was struck and injured by defendant's locomotive coming from the northeast and which was being negligently operated in violation of the laws of the State and of the city ordinance without sounding the whistle or bell or giving any warning whatever; and that but for such negligence of defendant the injury would not have occurred; the complaint sufficiently shows that plaintiff was a traveler over the street at said crossing, and it cannot be said as a matter of law that it shows plaintiff guilty of contributory negligence, on the theory that he was bound to see and hear what, by looking and listening, he would have seen and heard. p. 318.

5. RAILROADS. — *Crossing Accident.—Look and Listen.—Duty to Stop.*—The duty to look and listen does not require a traveler, who is about to cross a railroad track, to stop unless it is necessary to do so in order to see. p. 322.

6. RAILROADS.—*Crossing Accident.—Instruction.—"Look and Listen."*—An instruction, that plaintiff was bound to use ordinary care as he approached and attempted to cross defendant's track, and that if the evidence shows that he exercised that degree of care that an ordinarily prudent person would have exercised under all the circumstances, and was unable to hear and see the locomotive approaching then he was not guilty of contributory negligence; when construed with another instruction, that it cannot be said as a matter of law that plaintiff should have looked and listened at any particular point or at any particular time, or that he should have looked in one direction at a particular time and in another direction at another particular time, but that plaintiff should have looked and listened at such time, at such places and in such directions as a person exercising ordinary prudence would have done under the circumstances; and when considered with other established rules of law, and evidence showing a violation of a speed ordinance and failure to ring the bell; is not open to the objection that it ignores the "look and listen" rule and leaves it to the jury to say that plaintiff was not required to look and listen. p. 323.

7. RAILROADS.—*Crossing Accident.—Instructions.—Ordinary Care.—"Look and Listen."*—An instruction that a person has a right to cross a railroad at a highway crossing and is only required to exercise ordinary care in so doing, that to constitute such care he must use his senses of sight and seeing and take all reasonable precautions to avoid injury, that the kind and degree of care

must depend on the circumstances of each case, and that he must act as a person exercising ordinary care and prudence would act under the circumstances, is not open to the objection that it leaves it to the jury to excuse plaintiff from looking and listening, nor that the law fixes the quantum of care to be used by a traveler in such cases in that the traveler is bound to look and listen in addition to the use of ordinary care. p. 323.

8. APPEAL.—*Instructions.*—*Prejudice.*—Where the court instructed that an ordinance was in force providing that locomotive whistles should not be sounded within the city, except in making necessary track signals, and such as may be absolutely necessary to prevent injury to persons and property, the defendant was not harmed by the court giving an instruction consisting of §5431 Burns 1908, §4020 R. S. 1881, relating to the subject of signals at highway crossings outside of cities. p. 324.

9. APPEAL.—*Instructions.*—*Harmless Error.*—Where there was no evidence as to plaintiff's condition other than his physical condition arising from the injury sustained in attempting to cross defendant's railroad, and the damages were restricted to his injuries, an instruction which told the jury it may consider every particular phase of his injuries, loss of time, if any, with reference to his condition and ability to earn money in his business or calling, was not harmful to defendant by failing to limit the same to loss arising from the injury. p. 325.

10. NEGLIGENCE. — *Contributory Negligence.* — *"Incurring Risk."*— The term "incurring the risk" is properly applicable to the relation of master and servant, and in actions arising out of non-contractual relations it is a synonym for contributory negligence. p. 325.

11. TRIAL.—*Instructions.*—*Applicability to the Evidence.*—In an action for injuries received at a railroad crossing, where the evidence shows that the watchman was at the crossing, and there was no evidence that plaintiff knew where he should be, or that he was not where he should be, an instruction on the hypothesis that the watchman was absent from his post of duty was properly refused. p. 327.

12. RAILROADS.—*Crossing Accident.*—*Instructions.*—Where plaintiff's view of defendant's train was obstructed by a watch-house, and the train by which he was injured at a crossing approached the crossing without sounding a whistle or bell, and at an unlawful rate of speed, an instruction which told the jury, without qualification, that if plaintiff placed or assisted in placing the watch-house, he could not be excused for failing to observe the approach of defendant's train, was properly refused. pp. 327, 335.

13. TRIAL.—*Instructions.*—*Ignoring Question of Negligence Per Se.* —In an action for injuries incurred at a railroad crossing, a re-

quested instruction that "where an injury results from an accident that ordinarily careful and prudent men in the exercise of ordinary care would not have foreseen and anticipated as likely to occur, the law regards it as purely accidental, and for such injury no one can be held liable," ignores the question of negligence *per se* in defendant's failure to ring the bell and comply with the speed ordinance in force at the time and place of the injury, and its refusal was proper. p. 327.

14. RAILROADS.—*Crossing Accident.—Evidence.—Verdict.*—In an action for injuries incurred at a railroad crossing, where the evidence shows that plaintiff's vision of defendant's tracks toward the northeast was obstructed by a watch-house which plaintiff had just assisted in setting, that in starting across the tracks he looked to the northeast but could only see up the track for a distance of 250 to 300 feet because of the watch-house, that he saw the flagman from 60 to 80 feet east of him, that he saw no train approaching from the northeast, that he then started diagonally across the tracks and as he put one foot over the west rail he was struck by a train coming from the north, that the train was exceeding the speed ordinance of the city and no whistle or bell was sounded, or other warning given, the evidence is sufficient to sustain a verdict for plaintiff. pp. 328, 334.

15. RAILROADS.—*Crossing Accident.—Duty to Look and Listen.*—The same degree of caution in looking and listening for trains, before crossing a railroad, is not required of one whose duties on or about a railroad track require his crossing, as in the case of one who is discharging no duty and is purely a traveler. p. 329.

16. APPEAL.—*Harmless Error.—Instructions.—Request.*—In an action for injuries sustained at a railroad crossing, the failure of the court to instruct on the subject of the law's presumption as to a person's hearing and seeing what ought to be seen and heard, or what he is in a position to see and hear, and as to the effect of the presumption in the particular case, was not error in the absence of a request for such instruction. p. 331.

17. EVIDENCE.—*Presumptions.—Seeing and Hearing.*—That one sees and hears what he is in a position to see and hear, is a presumption of law which will prevail in the absence of evidence to the contrary. p. 332.

From Putnam Circuit Court; *John M. Rawley,* Judge.

Action by Robert R. Lynn against the Cleveland, Cincinnati, Chicago and St. Louis Railway Company. From a judgment for plaintiff, the defendant appeals. *Affirmed.*

*Lamb, Beasley, Douthitt & Crawford, T. C. Grooms, Frank L. Littleton* and *L. J. Hackney,* for appellant.

*John O. Piety, Silas A. Hays, Miller, Shirley, Miller & Thompson,* for appellee.

MYERS, J.—This is the second appeal in this cause, *Cleveland, etc., R. Co.* v. *Lynn* (1909), 171 Ind. 589, 85 N. E. 999, 86 N. E. 1017. On the return of the cause to the court below, a further, or fourth paragraph of complaint was filed, to which a demurrer was addressed for want of facts sufficient to constitute a cause of action, and was overruled, and that ruling is the first alleged error presented.

The allegations of this paragraph, with reference to looking and listening, which is the ground of attack on this paragraph, are identical with the allegations of the second and third paragraphs, which were before the court on the former appeal, where the same contention was made as here, viz., that the complaint shows that appellee did not look or listen until he was within two or three steps of the track, at which time he was looking to the southeast, when he was immediately struck by a train coming from the northeast, he having alleged a previous looking to the northeast, and showing a train going in that direction on the eastern track of a double track, the insistence being that his failure to see or hear the train coming from the northeast constitutes contributory negligence as a matter of law.

It was determined on the former appeal, under the same allegations, that it cannot be said, as a matter of law, that, under all circumstances or conditions, looking or listening at a particular time, in a particular direction, or from a particular place is required. *Chicago, etc., R. Co.* v. *Fretz* (1910), 173 Ind. 519, 90 N. E. 76; *Greenawaldt* v. *Lake Shore, etc., R. Co.* (1905), 165 Ind. 219, 74 N. E. 1081; *Cleveland, etc., R. Co.* v. *Stewart* (1903), 161 Ind. 242, 68 N. E. 170; *Stoy* v. *Louisville, etc., R. Co.* (1903), 160 Ind. 144, 66 N. E. 615; *Pittsburgh, etc., R. Co.*

v. *Burton* (1894), 139 Ind. 357, 37 N. E. 150, 38 N. E. 594;
*Chicago, etc., R. Co.* v. *Hedges* (1886), 105 Ind. 398, 7 N. E.
801; *Greany* v. *Long Island R. Co.* (1886), 101 N. Y. 419, 5
N. E. 425; *Case* v. *Chicago, etc., R. Co.* (1910), 126 N. W.
(Iowa) 1037; *Minot* v. *Boston, etc., Railroad* (1905), 73 N.
H. 317, 61 Atl. 509; *Chicago, etc., R. Co.* v. *Keegan* (1904),
112 Ill. App. 338; *Oldenburg* v. *New York, etc., R. Co.*
(1891), 124 N. Y. 414, 26 N. E. 1021; 3 Elliott, Railroads
(2d ed.) §1179a and cases cited.

The only material allegations of the fourth paragraph
different from the second and third paragraphs are that in
the two latter there is no direct allegation as to the direc-
tion from which the train which struck appellee came, while
in the fourth paragraph it is alleged that it came from the
northeast. The opinion of the court in the former appeal
discloses that other allegations of the second and third par-
agraphs were such as to disclose that the train came from
the northeast. The able counsel earnestly insist that a dif-
ferent question is presented by the fourth paragraph, in the
allegation that the train came from the northeast, but the
application of the rule declared in the former appeal, and in
former cases, does not seem to us to change the situation.
The same obstruction and the same surrounding conditions
are alleged in the second and third paragraphs.

Appellant's contention amounts to this: That as, under
the allegations, appellee looked first to the northeast, and
then to the southeast where there were not alleged to
be any obstructions, and the train came from the
northeast, he should have either looked first, or kept
looking in that direction, or looked after he passed the
watch-house. The complaint alleges that the view to the
northeast was obstructed until appellee reached a point
within eight or nine feet of the west track; that the track
was double, and from a short distance south of the point
where he was located, curved considerably to the south and
east, and that east and south of these tracks were the yards

of another railway company, in which were many tracks and switches curving with appellant's main tracks. It is not averred which of the two tracks was used for the north bound trains, nor which for the south bound trains, and we cannot say, because there is not alleged to have been an obstruction to the south and east, that he was under no obligation to look south and east, and should have looked to the northeast. It was his duty, in any event, to look to the southeast, because he could not excuse himself for not looking in that direction, also, to guard against possible injury. *Pittsburgh, etc., R. Co.* v. *Seivers* (1904), 162 Ind. 234, 67 N. E. 680, 70 N. E. 133; *Stoy* v. *Louisville, etc., R. Co.*, *supra; Malott* v. *Hawkins* (1902), 159 Ind. 127, 63 N. E. 308; *Morford* v. *Chicago, etc., R. Co.* (1902), 158 Ind. 494, 63 N. E. 857.

The fact that no obstruction is alleged to the south and east, and might require less attention than in looking to the northeast, in any event only shows a difference in the degree of care required as to one direction rather than another, and still leaves the question as to the care which is alleged as to looking to the northeast, and as the allegations are the same on that question in each paragraph, it must be held to have been determined, as it was specifically, as is shown by the opinion on the former appeal. It is urged that as it is alleged that the track was straight to the northeast, and no other obstruction than the watch-house is alleged, it must be taken that after appellee had passed the watch-house he could have seen. But it is averred that he stopped and looked up the track 250 feet, to see if any train was approaching from that direction, and also listened, but did not see any train approaching, nor hear one. The former appeal directs attention to this allegation, coupled with showing the distance the train would travel in a few seconds, and the possibility that the train was not within 250 feet. If appellant had desired a more specific allegation as to what distance to the northeast the track was straight, or as to

what was meant by "a considerable distance," it should have made a motion for that purpose. The question was determined adversely to appellant on the former appeal, in which it was squarely held that appellee's failure to look to the north, after passing the watch-house, was not, as a matter of law, negligence.

It is next urged that as the allegation is that a person approaching the track from the west "would have his view of defendant's tracks to the north obstructed until,"

3.    could refer only to the date of filing the complaint, and does not relate to the time of the incident, and is not an averment that the watch-house did obstruct the view. The allegations show that on the day appellee was injured, with others he was engaged in moving a watch-house, and had just placed it, and that his view to the north would have been obstructed by said watch-house about twenty feet west of the track, continuously up to a point within eight or nine feet of the west track. The allegations show the obstructions to relate to the time of setting the watch-house, and of the accident, and is a sufficient allegation of the obstruction, for if it would obstruct, necessarily it did.

It is next urged that as appellant has alleged in detail just what appellee did, there is a clear inference of contributory negligence, based on the theory that he was

4.    bound to see and hear what, by looking and listening he would have seen, or heard. But the difficulty with appellant's position on that point is, that that is asking us to assume that appellee was bound to look or listen at a particular place, in a particular direction, at almost a particular instant of time, irrespective of other relations or conditions. It might be a fair inference of fact, but there is in it just the difference between looking or listening, where the court can say that he must have seen or heard, and looking or listening under conditions where it is possible that he might not have seen or heard, with the added duty

of appellant to have a bell ringing, and to move its cars not to exceed five miles an hour.

The allegations are that the Chicago and Eastern Illinois Railroad Company had a great number of main tracks and side-tracks east of, and parallel with appellant's tracks; that appellee was an employe of the former company; that at the time of the accident he was engaged, with his coworkers, in removing the watch-house, which occasioned the obstruction of which he complains, from the south side of Third avenue to the north side; that after setting the watch-house appellee started from a point on the north side of said avenue, about twenty feet west of appellant's west track, to *cross said defendant's* tracks, and when he got to the southeast corner of the watch-house (which is elsewhere alleged to have been in dimensions nine feet north and south, and six feet east and west, and nine feet west of the west track) "he stopped and looked up defendant's tracks for a distance of about 250 feet, to see if any train was approaching from that direction, and also listened, and did not see any train approaching from that direction on defendant's west track, and neither did he hear any train approaching on said track, but he saw and heard a train on said defendant's east track, north of said avenue, going northeast, whereupon plaintiff looking to the southeast, to see if any trains were approaching from that direction, took two or three steps in said avenue, toward defendant's tracks, and just as he got one of his feet over the west rail of defendant's west track, the defendant, by, and through its servants, and agents, in charge of a locomotive engine drawing a train of cars approaching said avenue from the northeast, unlawfully, carelessly, negligently, and in violation of the laws of the State of Indiana, and in violation of said ordinance, within the corporate limits of said city, ran said locomotive engine, and train of cars, without sounding the whistle, or ringing the bell as required by law, and without giving any notice, or warning whatever," and struck appellee, etc.   It is alleged that but for

this neglect the injury would not have occurred. It thus sufficiently appears that appellee was a traveler over the street at the crossing. The cases of *Chicago, etc., R. Co.* v. *McCandish* (1907), 167 Ind. 648, 79 N. E. 903, and *South Bend Iron Works* v. *Larger* (1894), 11 Ind. App. 367, 39 N. E. 209, are not in point. In the former case there was no showing that the injured person had any right to be where he was, or that there was any duty to keep a bell ringing. In case of *South Bend Iron Works* v. *Larger, supra,* appellee was a licensee only. Here it is shown that appellee was a traveler, and in a place where he had a right to be.

The evidence shows without contradiction that appellant's tracks north of Third avenue were in a direct line for 2,700 feet, and ran in a general northerly direction, but slightly east of north. The only obstruction to the vision north and east was the watch-house, which appellant, within a few minutes, had placed on the north side of, but near to the sidewalk on that avenue, the east line of the watch-house being ten feet west of the west rail of appellant's west track. The watch-house was sixteen and two-tenths feet north and south, eight and two-tenths east and west, and eight feet high. There were no physical connections between the tracks from Third avenue north for a distance of 2,700 feet. Appellee's statement of the injury was that he had no previous knowledge that the two tracks were operated by appellant, and that the first time he had been on the west side of the tracks was on the morning of the injury, when, as directed by his foreman, he took four other workmen and moved the watch-house from the south side of Third avenue to the north side, and that it took about forty minutes for them to move it across and set it in position. He started to a tool box for a rule, the tool box was a little east of south, near a cinder pit on which they had been working, and the cinder pit was 575 feet from the shanty, but across several tracks. When he started he was on the west side of the watch-house, near the southwest corner, on the north side of

Third avenue.  He went east six or eight feet, and looked up the track north 250 or 300 feet, and could see no farther on account of the corner of the watch-house.  He looked east, and saw the flagman from sixty to eighty feet east of him. He did not look north again, because he thought he had looked far enough, and saw nothing, and it looked clear to him.  He then turned and started diagonally across the street and tracks, and did not again look north, and when he had gone three or four steps, and gone ten or twelve feet, and as he was about to advance his left foot over the west rail, he was struck by a train coming from the north.  The evidence varies as to the speed of the train, some witnesses putting it as much as twenty-five to thirty miles an hour, others at from twelve to fifteen, but no one placed it at less than eight.  The engineer fixed it at from eight to twelve miles an hour.  The speed ordinance was five miles an hour, and required the continuous ringing of the bell.  To the south and east the tracks were unobstructed for a distance of about 1,100 feet, though a two degree curve to the east set in 400 feet from the watch-house.  At any point between the watch-house and the west rail of the tracks, the tracks northeast were straight and unobstructed for 2,700 feet.

On this state of the evidence the court charged the jury by the fourth instruction as follows:  "It cannot be said as a matter of law, that plaintiff while approaching and attempting to cross defendant's tracks at Third avenue, should have looked and listened for approaching locomotive engines and trains, at any particular point, or at any particular time, or that he should have looked in one direction at a particular time, and in another direction at another particular time. These are questions for you to determine.  The law simply says that he should have looked and listened at such time, at such places, and in such directions as a person exercising ordinary prudence would have done under the circumstances surrounding the plaintiff at the time, as shown by all the

evidence in this case." The fifth instruction states that "the plaintiff under the law was bound to use ordinary care as he approached, and attempted to cross defendant's tracks at Third avenue, and if the evidence shows that as he approached and attempted to cross said track he exercised that degree of care that an ordinarily prudent person would have exercised under all the circumstances surrounding him, as shown by all the evidence in this case, and was unable to hear and see the locomotive engine approaching, until it was too late to avoid a collision, then he was not guilty of contributory negligence." By the sixth instruction the jury was told that "persons who desire to cross a railroad track at a point where a highway crosses the same, have a right to do so, and are only required to exercise ordinary care in doing so. To constitute such care, one approaching a railroad crossing must use his senses of sight and hearing, and take all reasonable precautions to avoid injury by passing locomotives, engines and trains. The kind and degree of care to be taken, must depend upon the circumstances of each case. The traveler is required to act as a person exercising ordinary care and prudence would act, under the circumstances surrounding him." No other instructions were given on the subject of looking or listening.

It is objected as to the fifth instruction, that the law fixes the quantum of care required of a traveler about to cross railroad tracks, and that it requires him to stop, and look and listen. The rule does not go so far as to require stopping, unless it is necessary that he should stop in order to see. 3 Elliott, Railroads (2d ed.) §§1166a, 1167.

The rule in *Malott* v. *Hawkins, supra*, on that point goes no further than to hold that the traveler must use ordinary care to select a place from which to look or listen. If the rule in *Pittsburgh, etc., R. Co.* v. *West* (1904), 34 Ind. App. 95, 69 N. E. 1017, should obtain on the subject of the presumption of seeing, it should be restricted, as in that case, to

what is within the range of vision, unless the traveler fails to exercise ordinary care in selecting the place from which to look.

The instruction is to be considered with relation to other established rules of law, and other evidence, and especially with the fact shown by the evidence of the existence

6. of an ordinance limiting speed to five miles an hour, and requiring the continuous ringing of the bell, and it is shown by the evidence that appellee had knowledge of the speed ordinance, and had a right to rely on it. The objection made to the fifth instruction is that it ignores the "look and listen" rule, and leaves it to the jury to say that appellee was not required to look and listen, and that it was sufficient that he should have used ordinary care to acquit him of negligence "though he failed to stop, and look and listen." The instruction is not open to the criticism made when taken in connection with the fourth charge on the subject of using his senses, and taking all reasonable precautions for his safety.

The objection to the sixth instruction is that it leaves it to the jury to excuse appellee from looking and listening. It need hardly be suggested that ordinary care requires

7. the use of the senses of sight and hearing, and their application to conditions where seeing and hearing will be of practical avail, and the instruction requires all reasonable precautions to be taken, which include the use of those senses.

The instruction is also assailed on the ground that it is claimed that the law fixes the quantum of care to be used by a traveler in cases of this kind, and it is not enough that he use ordinary care, and use his senses of sight and hearing, but he must assume that there is danger, and act on that assumption, and that he must listen for signals, and look attentively up and down the track, and on another ground that the court cannot tell the jury the kind of care to be exercised, and leave it to the jury to determine that ordinary

care does not require the traveler to look and listen. These two positions as to the same instruction, lead to a legal solecism, for if the law fixes the quantum of care in every case by a hard and fixed rule, then the court must so charge, and that results directly in the jury being told the kind of care that is to be exercised, which is well understood to be ordinary care. We are not able to see that the instruction is open to these objections.

Instructions nine, ten and eleven, requested by appellant, and given, presented the question of the increased vigilance required in the presence of known dangers or hazards, and were not otherwise materially different from the questions presented by instructions four, five and six. It would be inexpedient, if not impossible, to lay down a hard and fast rule on the subject of the quantum, or character of care required in every case, or to go further than the courts have gone in applying a general rule by saying that reasonable care must be used in view of all the circumstances and conditions, in which is involved the necessary elements of looking and listening, and their attendant consequences; the requirement to stop when necessary in order to see or hear, to look or listen from positions where their exercise will be of avail, in seeing or hearing; the requirement of increased caution in the presence of known dangers or signals; but after all, each case must stand on its own peculiar circumstances and facts.

Other general instructions given on the subjects of credibility of witnesses, looking, listening, and care, are assailed by appellant. We have examined each of them with care; they are numerous and voluminous, and it would unduly extend this opinion to set them out, but we are unable to discover harmful error in them.

Instruction fourteen consisted of the reading of §5431 Burns 1908, §4020 R. S. 1881, on the subject of signals at highway crossings. The instruction was in nowise

8. applicable in this case as to a crossing signal. The proviso of the act was for the purpose of marking the

distinction between rural highway crossings and the police regulations in cities and incorporated towns, and the section is to be taken in connection with the ordinance which by section five provided that whistles shall not be sounded "within the city, except in making necessary track signals, and such as may be absolutely necessary to prevent injury to persons and property other than their own," etc., and, on appellant's application, the court instructed the jury that this ordinance was in force, so that in no event could appellant be harmed by the instruction, or the jury misled into believing that whistling was required. *Cleveland, etc., R. Co.* v. *Miles* (1904), 162 Ind. 646, 70 N. E. 985.

Complaint is made of instruction fifteen, on the question of the assessment of damages, in which the language is used, "you may consider every particular phase of his injuries, loss of time, if any, with reference to his condition and ability to earn money, in his business or calling," it being urged that it should have added, "arising from the injury," or some such phrase. There was no evidence as to his condition other than his physical condition arising from the injury, and the damages are restricted to his injuries. *Vandalia Coal Co.* v. *Yemm* (1911), 175 Ind. 524, 92 N. E. 49, 94 N. E. 881, and cases cited.

By appellant's fourteenth instruction, the court was requested to instruct the jury that if appellee was in possession of his faculties, and knew and appreciated the obstruction created by the watch-house, and went voluntarily on the crossing without taking the precaution to advise himself as to approaching trains, as fully as he could have done without the watch-house, he incurred the risk, and cannot recover. Incurring the risk is properly applicable to the relation of master and servant, and while it is sometimes referred to in the discussion of cases, except in case of master and servant, it is so used only as a synonym for contributory negligence. Appellant's contention is based on some of the language used in *Indiana, etc., Oil Co.* v. *O'Brien*

(1903), 160 Ind. 266, 65 N. E. 918, 66 N. E. 742, where there is a discussion of the comparative meaning, force and application of the terms, but it will be seen that the decision is grounded on the proposition that incurred risk is a species of contributory negligence, in actions arising out of noncontractual relations, for the provisions of the statute, as to the burden of proof of contributory negligence, are held to apply, and also that it was not necessary to negative knowledge, in order to make a good complaint in that case, as against the rule where assumption of risk is required to be negatived. The cases are collected and discussed in that case. There is perhaps a distinction in the law of master and servant between contributory negligence and assumption of the risk, which is well stated in the text of 4 Thompson, Negligence §4611. See, also, Labatt, Master and Servant §§305, 306.

Aside from this feature of the instruction, the point is disposed of by the opinion on the former appeal, that it cannot be said, as a matter of law, that a traveler is required to look from any particular position, regardless of all other considerations. The question was fully covered by the nineteenth instruction requested by appellant, which is stronger and more specific as to the duty of appellee than the fourteenth.

Instruction sixteen was predicated on the doctrine of contributory negligence from voluntarily selecting a place for looking where seeing is partially obstructed, based on the rule in *Lundergan* v. *New York Cent. R. Co.* (1909), 203 Mass. 460, 89 N. E. 625. The distinction between that case and this is, that in that case there was no requirement for signals, and as is said in that case, with respect to a traveler's seeing gates open, but the watchman absent, and the traveler's not knowing that the gates were temporarily out of use, he was justified in regarding this as a circumstance indicating that he might cross in safety, and if nothing more appeared, it would be for the jury to say to what extent he was bound to

extend his watchfulness, and this was practically the position stated in the former appeal, on the question that appellee was required to look after he passed the watch-house, taken in connection with appellant's duty to give the required signal, and the limit of speed.

Instruction twenty was properly refused, as it goes to the question of the watchman being absent from his post of duty, but the evidence shows that the watchman was at the 11. crossing, and there is no evidence that appellee knew where he should be, or that he was not where he should be.

Instruction twenty-seven is too broad. It tells the jury, without any qualification, that if appellee placed, or assisted in placing the watch-house, "he cannot be excused 12. from failing to see and observe the approach of defendant's train which struck him."

By the twenty-ninth instruction the court was requested to instruct that "where an injury results from an accident that ordinarily careful and prudent men in the exer- 13. cise of ordinary care would not have foreseen and anticipated as likely to occur, the law regards it as purely accidental, and for such injury no one can be held liable." The court gave the following, "If you believe from the evidence that the injury to the plaintiff was caused by a mere accident, then your verdict should be for the defendant." It is claimed that this leaves the jury to determine, as a matter of law, what is an accident. The court also instructed the jury that negligence is the doing, or omitting to do something which a person of ordinary prudence, in the exercise of ordinary care, would or would not do or omit, under the circumstances. Appellant's requested instruction states the abstract question of law correctly, as does also that given, but appellant's request ignores the question of negligence *per se,* in the failure to ring the bell, and the speed ordinance, where there is express duty coupled with the known dangers in approaching crossings, and where a care-

ful and prudent man might reasonably expect danger and collision, the very thing to be guarded against, and for which the ordinance was enacted, so that appellant was not harmed by the failure to give the instruction.

Other questions are presented as to the admission and rejection of evidence. We have examined them in detail. Each involves uncontradicted or immaterial facts, or was properly admitted or rejected.

In the absence of the signal, and with a rate of speed greatly in excess of the speed ordinance, we cannot say that the evidence does not support the verdict. It may 14. have been a fair inference by the jury, that as appellant knew of the speed ordinance, and with an ordinance requiring the continuous ringing of the bell, if these precautions had been observed he would not have been injured, even though he did not look further than 250 feet to the northeast, for with a train within that distance, he might, both from the rate of speed required and from a ringing bell, have avoided the injury, or passed in safety. At least on the question of his alleged negligence, the matter was for the jury under all the evidence.

The judgment is affirmed.

## ON PETITION FOR REHEARING.

MYERS, J.—The able counsel for appellant have presented a brief on petition for a rehearing, in which their position on the "look and listen" rule is much more clearly presented than in their original brief, their contention being that by the original opinion in the case, the rule of look and listen is abrogated, and if that reasonably can be said to be its construction or effect, their position is well taken, though the court had no idea of that kind, or no suspicion of that construction or effect, because we recognize the rule in all its established force, and had no idea of abandoning it, or limiting it, and if that construction is permissible, it is because

the court misapprehended the situation and the force of the conclusions as stated.

We set out in the original opinion the fourth, fifth, and sixth instructions, which at that time we were unable to see abrogated the "look and listen" rule, and after a reëxamination we are of the same opinion.

The specific objection is, that they do not require attentive looking and listening, which, as a matter of law, is required, and that the term "ordinary care" is not broad enough to require looking and listening attentively, and that the jury should have been instructed that a traveler in crossing a railroad track is bound to anticipate danger and to look and listen attentively.

Appellee was not an ordinary traveler. He was a workman engaged in the performance of the duties then in hand at that place and while that could not excuse him from looking and listening, yet the character of his duties, and the attention they required, are not to be lost sight of.

The same degree of caution is not required of one whose duties on or about a railroad track require his crossing, as in case of one who is discharging no duty, and is purely a traveler. The attention of the former is necessarily drawn to his work and duties, while the latter owes no duty arising from employment, and simply exercises an independent right of crossing, accompanied by the legal requirement on him, but unaccompanied by any other consideration, to guard his own safety.

The rule does not apply in all its strictness to the former class of persons as to the latter. *Cleveland, etc., R. Co.* v. *Morrey* (1909), 172 Ind. 513, 88 N. E. 932; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1907), 168 Ind. 438, 78 N. E. 1033; *Chicago, etc., R. Co.* v. *Vandenberg* (1905), 164 Ind. 470, 480, 73 N. E. 990; *Pittsburgh, etc., R. Co.* v. *Seivers* (1904), 162 Ind. 234, 243, 67 N. E. 680, 70 N. E. 133; *Baltimore, etc., R. Co.* v. *Peterson* (1901), 156 Ind. 364, 59 N. E. 1044.

Appellee was not the servant of appellant, charged with

assumption of the risk; but the watch-house, which was being placed, was for the joint use of appellant and another parallel road; the watchman who used it watched all the tracks at that street crossing, some sixteen or seventeen, and in its being placed, we must assume that appellee was where he had a right to be, and was where he was by invitation or permission of appellant, and was entitled at least to the protection which ringing a bell or giving other signals would furnish, and the duty to exercise ordinary care was required of each.

If the fourth, fifth and sixth instructions absolve appellee from the duty of looking and listening, our former opinion is erroneous, but we do not so understand them, or that they relax the rule in the least.

The only qualification of it that they make is that looking and listening is not required as a matter of law, at any particular place or in any particular direction, and that is settled by the former appeal.

The case of *Pittsburgh, etc., R. Co.* v. *Seivers, supra,* has some features common to this case, but with this difference, that it is shown that Gaby, appellee's decedent, did not look at all, while here it appears that appellee did look.

True, he was not at work on the tracks, and it was his duty to look and listen, but he was in a somewhat different situation from an ordinary traveler at a crossing, in that his work occasioned him to cross said tracks, and it was both his right and his duty to do so, and the question, as we conceive it to be, is, Did he use that care and make that use of his senses of sight and hearing proportionate to the danger to be avoided, and the consequences which might result from that neglect, which an ordinarily prudent man under the circumstances should use? If so, that, after all, is the law's interpretation of ordinary care. *Republic Iron, etc., Co.* v. *Ohler* (1903), 161 Ind. 393, 401, 68 N. E. 901; *Louisville, etc., R. Co.* v. *Schmidt* (1897), 147 Ind. 638, 46 N. E. 344; *Lake Erie, etc., R. Co.* v. *Stick* (1896), 143 Ind. 449, 41

N. E. 365; *Cincinnati, etc., R. Co.* v. *Duncan* (1896), 143 Ind. 524, 528, 42 N. E. 37; *Smith* v. *Wabash R. Co.* (1895), 141 Ind. 92, 99, 40 N. E. 270; *Lake Shore, etc., R. Co.* v. *McIntosh* (1895), 140 Ind. 261, 270, 38 N. E. 276; *Pennsylvania Co.* v. *Horton* (1892), 132 Ind. 189, 193, 31 N. E. 45; *Cleveland, etc., R. Co.* v. *Harrington* (1892), 131 Ind. 426, 433, 30 N. E. 37; *Stewart* v. *Pennsylvania Co.* (1892), 130 Ind. 242, 29 N. E. 916; *Ohio, etc., R. Co.* v. *Hill* (1889), 117 Ind. 56, 60, 18 N. E. 461; *Toledo, etc., R. Co.* v. *Goddard* (1865), 25 Ind. 185, 197; *Aurelius* v. *Lake Erie, etc., R. Co.* (1898), 19 Ind. App. 584, 591, 49 N. E. 857.

In *Malott* v. *Hawkins* (1902), 159 Ind. 127, 134, 63 N. E. 308, it is said: "In cases of this character, a trial court should not, in instructing the jury upon the duty of the person injured or killed, stop with the generality that such person was required to use ordinary care for his own safety, but it should instruct the jury as to some, at least, of the duties of a person about to cross a railway track upon a highway." That, as we understand it, was done by the court in the fourth, fifth and sixth instructions.

In that case too, following *Cleveland, etc., R. Co.* v. *Harrington, supra,* and *Chicago, etc., R. Co.* v. *Thomas* (1900), 155 Ind. 634, 58 N. E. 1040, it was affirmed that "it is not ordinarily possible, however, to affirm, as a matter of law, the precise number of feet from the crossing at which a traveler must look and listen, the underlying test being, did the traveler exercise ordinary care, in view of the danger, in selecting the place?" And that is the precise question here urged, that is, that appellee did not select the right place to look, and that question was also determined on the former appeal.

If appellant had desired an instruction on the subject of the law's presumption as to one's hearing and seeing what ought to be seen and heard, or what he is in a position to see or hear, and its effect in an individual case, or as to specific requirements as to looking and listening,

it should have tendered an instruction on the point. The nearest approach to it is by the sixteenth instruction, which, in effect, is no broader on these points than those given, and is incorrect upon other grounds.

On the question of hearing, it appears that on the second track east of the one on which appellant was injured, a freight-train was traveling in the direction from which the train which injured plaintiff was coming, and the noise of the two trains may not have been distinguishable.

As to the question of looking, it is in evidence that appellee did look when at a point from which he could see from 250 to 300 feet. If he had looked from a point six or eight feet further east, he could have seen 2,700 feet.

With the proposition settled on the former appeal, that appellant was not required to look in any particular direction at any particular time, there seems no escape from the proposition that whether he should have seen the train was a question for the jury.

This is necessarily so, unless the court can say, as a matter of law, that ordinary care at a crossing does not involve looking or listening, or that looking and listening is something more than, or apart from, ordinary care.

It seems to us that the latter proposition is the correct one. Stated conversely: If neither looking nor listening be present, ordinary care, as a matter of law, has not been observed. If they be present, it is still a question for the jury, whether they were from points or under circumstances where they would or should be available as notice of a coming train, by reason of the difference between an inference of fact and a presumption of law.

As to the fact, there is no presumption, but a matter of evidence and proof, with the burden of proof on appellant.

It is a pure presumption of law, that one sees and hears what he is in a position to see and hear, and which, 17. in the absence of evidence which overrides it, will prevail.

In *Justice* v. *Lang* (1873), 52 N. Y. 323, it is said: "Presumptions of law are, in reality, rules of law and part of the law itself; and the court may draw the inference whenever the requisite facts are developed, \* \* \* while all other presumptions, however obvious, being only inferences of fact, cannot be made without the intervention of a jury [Best, Presumptions 18]." See, also, *Cook* v. *Dowling* (1893), 26 N. Y. Supp. 764, 6 Misc. Rep. 271.

In 2 Chamberlayne, Mod. Law of Ev. §1018, it is said: "The burden of proof properly so called, is not affected in the least by the creation of a presumption of law," citing numerous cases. See, also, 2 Chamberlayne, Mod. Law of Ev. §1082 and note, where the distinction is drawn between presumptions of law and inferences of fact.

An inference of fact may be drawn from another fact or other facts, but a presumption of law is drawn from a particular undisputed fact, or as a conclusion of the law itself, or as is said in *Justice* v. *Lang, supra,* "the presumption of the existence of one fact from the existence of another fact, is within the exclusive province of the jury." That is, that a fact otherwise doubtful may be inferred from a fact which is proved; a fact inferred from a fact—but a presumption of law is not founded on a fact deduced by inference, but upon an established fact, on which the law founds its own inference. If these be correct principles, we have a case where appellee did look, but, as claimed, not from the right place in order to see fully, and we are asked to apply the presumption of law that he did see, or should be held to have seen, while, on the other hand, we have the rule of inference of facts as a question for the jury.

If the jury had drawn the inference that he did see, or that he ought to have seen, it would have been conclusive on appellee, and conversely, the general finding covers the inference of fact that he was not bound to see.

The opinion on the former appeal, as it seems to us, covers the question presented by the court's refusal to give the

fourteenth and fifteenth instructions, which present the question of the obstruction made by the watch-house appellee placed, and appellee's duties in the premises.

Instruction sixteen, refused, does not attempt to advise the jury as to the elements of ordinary care, but advises it, in substance, that if appellee selected the wrong place to look from, he would not have exercised reasonable and ordinary care for his safety, and would be guilty of negligence, precluding a recovery, and is too restricted, especially in view of the holding on the former appeal.

Instruction twenty, refused, was directed to the question of the increased care required of appellee, because the watchman was not at his place of duty.

The evidence shows that this watchman had charge of some sixteen or seventeen tracks. It is shown that appellee was a stranger to the crossing, did not know where the watchman's place was, nor does the evidence show where it was the latter's duty to be. The instruction, therefore, was not applicable to any evidence in the case.

14.  Counsel again vigorously attack the sufficiency of the evidence, claiming an impossible liability under appellee's statement of the occurrence.

If the train was running thirty miles an hour, the highest rate fixed by a number of witnesses, it was traveling forty-four feet each second, six seconds would have put it out of range of 264 feet; five seconds would have put it within a range of 220 feet. If appellee could see only 250 feet, less than six seconds brought the train within that range of vision.

The record does not disclose any finding of the jury as to the rate at which the train was running, and on the former appeal it was said: "But assuming that the train approached said crossing at the rate of thirty miles an hour, it would traverse the distance of 250 feet in less than six seconds, and, in view of the time required to look and listen for trains from the south, and to walk from the watch-house

to the track, we do not think that we can say that the train was within the space of 250 feet when appellee looked in that direction, nor that he loitered in his efforts to cross.''

With this proposition as the law of the case, there could be but one other question arising on the evidence, and that is as to the evidence of appellee that he could not see more than 250 or 300 feet because of the watch-house, and whether he was excused from looking after passing beyond the watch-house, and that question is settled by the former appeal, unless the refusal to give instruction twenty-seven was erroneous.

12. Instruction twenty-seven was identical with instruction nineteen, set out in the opinion on the former appeal.

The instruction is too broad, in that it practically instructs that appellee would be guilty of contributory negligence in failing to see because of the shanty; in other words, that under no circumstances could he recover if the shanty caused an obstruction which prevented him from seeing at a particular point. Manifestly the questions of how far he could or did see from the point he looked, and the lapse of time thereafter until he was struck, are approximations, which may have varied either way.

We do not feel justified in disturbing the judgment upon the evidence, after again reviewing it.

Error was urged in the original brief in the amount of the recovery.

Interest on this judgment would produce a third more than he could earn if he worked every day in the year, during his expectancy, besides having the principal now, and while the elements of pain and suffering cannot, and should not be measured with a fine distinction, we are constrained to the belief that the judgment is too large, when we consider that compensation is the rule for assessing damages.

If appellee will remit $3,000 of the judgment, as of the date of the return of the verdict, within fifteen days, the

petition for a rehearing will be refused, otherwise a rehearing will be granted.

NOTE.—Reported in 95 N. E. 577 and 98 N. E. 67. See, also, under (1) 33 Cyc. 1003; (2 and 3) 33 Cyc. 1053; (4) 33 Cyc. 1060; (5) 33 Cyc. 1010; (6 and 7) 33 Cyc. 1140; (8 and 9) 38 Cyc. 1809; (10) Cyc. Anno. (1913) 3220; (11) 38 Cyc. 1612; (12) 33 Cyc. 1136; (13) 38 Cyc. 1633; (14) 33 Cyc. 1087; (15) 33 Cyc. 831; 37 L. R. A. (N. S.) 136 (16) 38 Cyc. 1693; (17) 33 Cyc. 1073. As to contributory negligence of persons not looking for the approach of cars, see 51 Am. Rep. 360.